IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CLAUDIA BAILEY,[1] | § | |
| | § | No. 260, 2014 |
| Respondent Below- | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware, |
| v. | § | in and for New Castle County |
| | § | File Nos. 14-02-03TN, |
| DIVISION OF FAMILY SERVICES, | § | 14-02-04TN, and 14-02-05TN |
| | § | Petition Nos. 14-03114, |
| Petitioner Below- | § | 14-03116, and 14-03119 |
| Appellee. | § | |

Submitted: September 30, 2014
Decided: November 13, 2014

Before **HOLLAND**, **RIDGELY**, and **VALIHURA**, Justices.

## **O R D E R**

This 13th day of November, upon consideration of the appellant's opening brief filed pursuant to Supreme Court Rule 26.1(c), her counsel's motion to withdraw, and the responses filed by the Division of Family Services (DFS) and the Office of the Child Advocate (OCA), it appears to the Court that:

(1) The respondent-appellant, Claudia Bailey ("the Mother"), filed this appeal from the Family Court's order, dated April 16, 2014, which terminated her parental rights with respect to her three minor children, John (born September 11,

---

[1] The Court previously assigned a pseudonym to the appellant pursuant to Supreme Court Rule 7(d). The Court also uses pseudonyms for the children throughout this Order.

2002), Trevor (born September 15, 2005), and Richard (born May 27, 2010).[2] The Mother's appointed counsel on appeal has filed a brief and motion to withdraw pursuant to Rule 26.1(c). Counsel asserts that she has made a conscientious review of the record and the law and can find no arguable grounds for appeal. Mother has enumerated several points for the Court's consideration on appeal. DFS and OCA have filed responses to the brief and have moved to affirm the judgment below.

(2) On January 2, 2013, DFS filed an emergency petition for temporary custody of the three children after their four-year-old brother died while in the Mother's care. DFS alleged that the children were dependent and/or neglected in their Mother's care. A preliminary protective hearing was held on January 9, 2013 and an adjudicatory hearing was held on February 8, 2013. Custody of the children was continued with DFS. Thereafter, the Family Court held a dispositional hearing and three review hearings.

(3) On December 31, 2013, DFS filed a motion requesting that the goal be changed from reunification to termination of parental rights. The Mother filed a response to DFS' motion and also filed her own motion seeking visitation with the children. The Family Court held a permanency hearing on February 14 and February 28, 2014. Following the hearing, the Family Court changed the goal to termination of parental rights (TPR) with a concurrent goal of reunification. The

---

[2] The Family Court's order also terminated the parental rights of the children's respective fathers. No appeal was filed from the termination of the fathers' parental rights.

2

Family Court also ordered that the Mother could have visitation with the children only in the discretion of the children's therapist.

(4) The TPR hearing was held on March 18, 2014. The Family Court heard testimony from eleven witnesses who included a licensed psychologist, a parent educator, John and Trevor's therapist, a parent aide, a DFS investigator, a DFS family crisis therapist, the Mother's probation officer, a DFS treatment worker, a DFS supervisor, a clinical social worker with the Progressive Life Center, and the Mother. The testimony from the witnesses fairly established that DFS had developed a case plan for the Mother in January 2013, which required the Mother to maintain regular visitation with the children, obtain adequate employment and maintain stable finances, obtain stable housing, choose appropriate caregivers, attend the children's medical appointments, complete a parenting class, have a mental health evaluation and follow any recommendations for treatment, comply with the conditions of her criminal probation, and access services to meet the children's physical, mental, and educational needs.

(5) The testimony of the witnesses, including the testimony of the Mother herself, established that she had failed to comply with the elements of her case plan. By the time of the TPR hearing, the children had been in DFS custody for more than a year. In that period, the Mother had not maintained consistent visitation with the children and had not visited them since April 2013. She did not

3

have stable housing or proof of adequate employment. She had not completed the intake for obtaining a parent aide. She had not completed the parenting class. She had not completed the mental health evaluation. She had been incarcerated for several months during the course of the dependency/neglect proceedings for a violation of probation and had other pending criminal charges at the time of the TPR hearing (which could result in further incarceration).

(6) The therapist for John and Trevor testified that both boys were receiving intensive treatment and have profound mental health needs due to the severe nature of the traumatic experiences they suffered while in the Mother's custody. While both continue to struggle, they have supportive and loving interactions with their foster family. Mother's inconsistent visitation with the children had led the therapist to conclude that visitation with her was not in their best interests. Although the Mother testified that she wanted the children to be returned to her custody, she expressed concerns about her ability to address their significant emotional issues and mental health needs.

(7) Following the hearing, the Family Court found clear and convincing evidence that there was a statutory basis for termination because the Mother had failed to plan adequately for the children's emotional and physical needs and that termination of the Mother's parental rights was in the children's best interests.[3]

---

[3] DEL. CODE ANN. tit. 13, § 1103(a)(5) (2009).

Among other things, the Family Court found that the children had been in DFS' care for more than one year[4] and that failure to terminate the parental relationship would result in continued emotional instability or physical risk to the children.[5] Moreover, notwithstanding the Mother's expressed desire to have her children returned to her, the Family Court concluded that all of the remaining best interest factors weighed in favor of terminating the Mother's parental rights.[6]

(8) In response to her counsel's motion to withdraw, the Mother sent two emails raising several points for the Court's consideration. She contends that she is a good mother and that DFS took advantage of her while she was in mourning for her dead son. She asserts that there was insufficient proof that she ever neglected her children and that her children never should have been taken from her in the first place. She contends that she was attempting to comply with the part of her case plan requiring her to address her legal issues, which is why she turned herself in on a capias in September 2013. This led to her incarceration for five months and her subsequent inability to comply with the other elements of her case plan. She asserts that once she was released, she made efforts to comply with her plan but was denied visitation with her children. She asserts that she had stopped visiting with the children in April 2013 because she was grieving over the loss of

---

[4] *Id.* § 1103(a)(5)a1.

[5] *Id.* § 1103(a)(5)a5.

[6] *Id.* § 722

5

both her son and her mother and because leaving the children after her visits with them was too painful.

(9) This Court's review of a Family Court decision to terminate parental rights entails consideration of the facts and the law as well as the inferences and deductions made by the Family Court.[7] To the extent that the Family Court's rulings of law are implicated, our review is *de novo*.[8] To the extent that the issues on appeal implicate rulings of fact, we conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly wrong.[9] If the trial judge has correctly applied the law, our review is limited to abuse of discretion.[10]

(10) In reviewing a petition for termination of parental rights, the Family Court must employ a two-step analysis.[11] First, the court must determine, by clear and convincing evidence, whether a statutory basis exists for termination.[12] Second, the court must determine, by clear and convincing evidence, whether termination of parental rights is in the child's best interests.[13]

---

[7] *Wilson v. Div. of Family Serv.*, 988 A.2d 435, 439-40 (Del. 2010).

[8] *Id.* at 440.

[9] *Powell v. Dep't of Serv. for Children, Youth & Their Families*, 963 A.2d 724, 731 (Del. 2008).

[10] *Id.*

[11] DEL. CODE ANN. tit. 13, § 1103(a) (2009).

[12] *Shepherd v. Clemens*, 752 A.2d 533, 537 (Del. 2000).

[13] *Id.*

(11)  In this case, we have reviewed the parties' positions and the record below very carefully.  We conclude that there is ample evidence on the record to support the Family Court's termination of Mother's parental rights on the statutory basis that she failed to plan adequately for the children and because termination was clearly in the children's best interests.  We find no abuse of discretion in the Family Court's factual findings and no error in its application of the law to the facts. Accordingly, the judgment below shall be affirmed.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.  The motion to withdraw is moot.

BY THE COURT:

/s/ Henry duPont Ridgely
Justice