IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BRAD UPTON, | § | |
| | § | No. 398, 2014 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court of |
| | § | the State of Delaware in and for |
| v. | § | Sussex County |
| | § | |
| DIVISION OF FAMILY | § | File No. 13-07-02TS |
| SERVICES, | § | CPI No. 13-24321 |
| | § | |
| Petitioner Below, | § | |
| Appellee, | § | |
| | § | |
| and | § | |
| | § | |
| COURT APPOINTED SPECIAL | § | |
| ADVOCATE, | § | |
| | § | |
| Appellee. | § | |

Submitted: November 13, 2014
Decided: December 11, 2014

Before **STRINE**, Chief Justice, **RIDGELY** and **VALIHURA**, Justices.

**O R D E R**

This 11th day of December 2014, upon consideration of the appellant's brief filed under Supreme Court Rule 26.1 ("Rule 26.1"), his attorney's motion to withdraw, and the responses of the appellees, Division of Family Services ("DFS") and the court appointed special advocate ("CASA"), it appears to the Court that:

(1) The appellant, Brad Upton ("Father"), filed this appeal from the Family Court's order of July 1, 2014, terminating his parental rights in his three daughters, Carly, born December 5, 2007, Chloe, born October 1, 2009, and Chelsea, born October 24, 2011 (collectively "the Children").[1] The parental rights of the Children's mother ("mother") were terminated in the same order and are not at issue in this appeal.

(2) On appeal, Father's counsel ("Counsel") has filed an opening brief and a motion to withdraw under Rule 26.1. Counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. Father has responded to Counsel's presentation with a written submission that raises several claims. DFS and CASA have responded to the position taken by Counsel and the issues raised by Father and have moved to affirm the judgment of the Family Court.

(3) The record reflects that, on February 29, 2012, DFS filed an emergency dependency/neglect petition seeking custody of the Children on the basis that the Children had witnessed an incidence of domestic violence between mother and Father while in mother and Father's home. At the time of the petition, the two older children, Carly and Chloe, were in a

---

[1] Having previously assigned a pseudonym to the appellant, the Court hereby assigns pseudonyms to the children. Del. Supr. Ct. R. 7(d).

guardianship held by their paternal grandmother, Joan Davis ("Davis"), as a result of prior dependency/neglect proceedings involving mother and Father.[2]

(4) By *ex parte* order on March 1, 2012, the Family Court granted temporary custody of the Children to DFS. At the March 22, 2012 preliminary protective hearing that followed, mother and Father stipulated, subject to their respective positions on Davis' guardianship, that the Children were dependent, and that it was in the best interests of the Children that custody remain with DFS.

(5) At the April 19, 2012 adjudicatory hearing, the Family Court heard evidence on whether Davis should retain guardianship of Carly and Chloe. At the conclusion of the hearing, the court rescinded the guardianship previously awarded to Davis, after determining that Carly and Chloe were neglected in Davis' care. In its April 19, 2012 order, the court ruled as follows:

> [Davis] was supposed to be caring for [Carly and Chloe] because they were in her guardianship in 2009 and 2010, when [they] were dependent in the care of mother and father, mother and father were unable to regain custody because they did not complete their case plans for reunification. Nonetheless, [Davis] placed [Carly and Chloe]

[2] The Court hereby assigns a pseudonym to the paternal grandmother. Del. Supr. Ct. R. 7(d).

back in mother and father's home, despite specific direction from the Court not to do so, and in violation of her obligations as a guardian. Since [Davis] is no longer acting as a guardian of [Carly and Chloe], and because they are dependent in the care of mother and father, full custody of [Carly and Chloe] is hereby awarded to [DFS]. As indicated previously, because mother and father have agreed that she is dependent in their care, custody of [Chelsea] is awarded to DFS. DFS has made reasonable efforts in this matter to prevent or eliminate the need for removing the children from their home and toward preserving and reunifying the family.

(6) In late April 2012, Father entered into a reunification case plan with DFS.[3] The case plan identified a number of problem areas that Father needed to remediate to achieve reunification with the Children, namely financial issues, family violence concerns, appropriate parenting, substance abuse, emotional instability/mental health issues, housing problems, and legal issues.

(7) Under the case plan, to demonstrate sufficient progress in the identified problem areas, Father was required to: obtain employment or other income to provide for the family's basic needs, attend and complete a parenting class, complete an approved domestic violence course for perpetrators of domestic violence and follow any discharge

---

[3] *See* Del. Fam. Ct. Civ. R. 220 (governing contents of case plans).

4

recommendations, undergo a substance abuse evaluation and comply with any recommendations including recommended treatment, undergo a mental health evaluation and comply with any recommendations including recommended treatment, locate housing for himself and the Children, and comply with conditions of court orders. The case plan noted that, as of April 19, 2012, Father was incarcerated on pending felony and misdemeanor charges, but that Father's incarceration "would not provide [Father] with additional time to complete his case plan."

(8) At the May 7, 2012 dispositional hearing, Father, mother, and the CASA argued that DFS had failed to use due diligence, by not identifying and providing notice to relatives within thirty days of placement as required by federal statute.[4] The Family Court agreed, ruling that "DFS has failed to exercise due diligence in this matter to identify and provide notice to adult relatives." Otherwise, the court found "that DFS has made reasonable efforts in this matter toward preserving and reunifying the family."

---

[4] *See* 42 U.S.C.A. § 671(a)(29) (providing that, within thirty days after the removal of a child from the custody of the parent(s), the State shall exercise due diligence to identify and provide notice to all adult grandparents and other adult relatives of the child (including any other adult relatives suggested by the parents) that the child has been removed from the custody of the parent(s) and explain the options the relative has to participate in the care and placement of the child).

(9) At the review hearing on June 25, 2012, DFS submitted evidence indicating that relatives had been notified about the placement of the Children. At the conclusion of that hearing, and at the review hearings that followed on September 17, 2012, November 19, 2012, and February 21, 2013, the Family Court found that the Children were dependent and that DFS had made reasonable efforts at reunification.

(10) On February 25, 2013, DFS filed a motion requesting that the court change the permanency goal from reunification to termination of parental rights. The motion was considered at the permanency hearing on April 8, 2013. At the conclusion of that hearing, the court granted the motion and changed the permanency goal from reunification to termination. In its April 8, 2013 order, the Family Court ruled:

> [The Children] have been in the care of [DFS] since March 1, 2012. [Carly] was four years old, [Chloe] was two years old, and [Chelsea] was less than six months old. [Carly and Chloe] had a history of a prior placement with [DFS] in late 2009, at the time of [Chloe's] birth, and a subsequent guardianship with their paternal grandmother. For a significant portion of their lives, they have not been in the care of their parents.
>
> Mother and father have been working towards reunification for the past year. . . . Several different agencies have attempted to engage mother and father in addressing the elements of their case plans. Yet, mother and father have not completed

those case plans, and have not taken steps to show that their daughters would no longer be dependent in their care. The Court is unable to determine that it would be safe for [the Children] to be returned to the care of their parents.[5]

(11) On July 12, 2013, DFS filed a petition to terminate Father's parental rights ("TPR petition") on the ground that he had failed "to plan adequately for [the Children's] physical needs or mental and emotional health and development."[6] By order dated July 29, 2013, the court scheduled a hearing for December 19, 2013, and at the December 19, 2013 hearing, the court scheduled the trial for March 20, 2014. On March 20, 2014, the trial was rescheduled until April 11, 2014, so that the court could consider a petition for guardianship filed by Davis on February 10, 2014.

(12) On April 11, 2014, the court conducted an evidentiary hearing on Davis' petition for guardianship. After hearing testimony from Davis, mother, Father, Davis' prior landlord, the DFS treatment worker, the DFS permanency worker, and the CASA, the Family Court denied the petition, ruling that placement with Davis was not in the best interests of the Children.

---

[5] The Court notes that, although DFS was directed to "file its termination petition within thirty days of the date of this order," the record reflects that the April 8, 2013 order was not mailed to the parties until June 25, 2013. The record does not reflect why the order was not mailed until June 25, 2013.

[6] 13 Del. C. § 1103(a)(5).

(13) Immediately after ruling on the guardianship petition, the Family Court began the trial on the TPR petition. At the outset of the trial, mother voluntarily consented to a termination and transfer of her parental rights in the Children.

(14) Over the course of the two-day trial, the Family Court heard testimony from Father's domestic violence treatment counselor, Father's alcohol and drug counselor, the DFS treatment worker, the DFS permanency worker, the CASA, and Father. The Family Court also heard testimony from a Department of Correction probation and parole supervisor, concerning Father's conviction and sentencing on July 19, 2013 for violation of probation, for which Father was currently incarcerated.

(15) By order dated July 1, 2014, the Family Court terminated Father's parental rights on the ground that he had failed to plan for the Children's needs and that termination was in the Children's best interest. When considering best interest factor eight, concerning "the criminal history of any party," the court found:

> Father is currently incarcerated, due to substance abuse issues. He is participating in intensive treatment. The earliest that he can expect to be released from prison is June 2015. At that time, all three of his children will have remained in foster care, for the second time, for over three years. The Court does not believe that father will be able to complete all the terms of his case plan while

8

> incarcerated, so that he will be able to care for his daughters upon his release.

This appeal followed.

(16) This Court's review of a Family Court order terminating parental rights requires that we consider the facts and the law.[7] When issues implicate rulings of law, our review is *de novo*.[8] When issues implicate rulings of fact, we conduct a limited review of the Family Court's factual findings to assure that they are sufficiently supported by the record and are not clearly wrong.[9] We do not disturb inferences and deductions that are supported by the record and are the product of an orderly and logical deductive process.[10] If the Family Court has correctly applied the law, our review is limited to abuse of discretion.[11]

(17) In Delaware, the termination of parental rights requires a two-step analysis.[12] The Family Court must first identify a statutory basis for termination[13] and second, determine what is in the best interest of the

---

[7] *Wilson v. Div. of Family Serv.*, 988 A.2d 435, 439-40 (Del. 2010).

[8] *Id*. at 440.

[9] *Id*.

[10] *Id*.

[11] *Id.*

[12] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).

[13] *Id*. at 537. *See* 13 Del. C. § 1103(a) (listing grounds for termination of parental rights).

child.[14]  Also, when the statutory basis for termination is failure to plan[15] there must be proof of at least one additional statutory condition[16] and proof that DFS made *bona fide* reasonable efforts to preserve the family unit.[17]  It is incumbent on the petitioner to prove by clear and convincing evidence that there is a statutory basis for termination, and that the best interest analysis favors termination.[18]

(18)  Having carefully reviewed the parties' positions on appeal and the Family Court record, we conclude that there is clear and convincing evidence supporting the termination of Father's parental rights on the basis of his failure to plan and because termination was in the Children's best interest.  The record reflects that Father did not complete the major aspects of his case plan despite DFS' reasonable efforts at reunification, and that the Children are well-adjusted in their current pre-adoptive home.

(19)  In his written submission, Father challenges the termination of his parental rights, claiming that the court over-emphasized his incarceration and underestimated the progress he can make on his case plan while

---

[14] *Shepherd v. Clemens*, 752 A.2d at 537.  *See* 13 Del. C. § 722(a) (listing best interest factors).

[15] 13 Del. C. § 1103(a)(5).

[16] *See id.* at a., b. (listing additional conditions).

[17] *In re Hanks*, 553 A.2d 1171, 1179 (Del. 1989).

[18] *Powell v. Dep't of Serv. for Children, Youth & Their Families*, 963 A.2d 724, 731 (Del. 2008).

incarcerated. Father also claims that the court undervalued his relationship to the Children and the Children's wishes to be placed with a family member. Third, Father claims that DFS did not make adequate or reasonable efforts on behalf of the Children as evidenced by allegations that Carly was physically abused in a Dover foster home. Finally, Father claims that the Family Court unfairly denied Davis' guardianship petition.

(20) Father's claim concerning the Family Court's denial of Davis' petition for guardianship is unavailing. Davis did not appeal the April 11, 2014 denial of her guardianship petition. As a result, Father has no standing to challenge that decision.[19]

(21) Father's remaining claims are without merit. Contrary to Father's claims, the record contains ample evidence supporting the Family Court's findings that Father failed to make adequate progress on his case plan, and that DFS made *bona fide* reasonable efforts to reunify Father with the Children. The record also reflects that the Family Court carefully considered the best interest factors and made factual findings that guided its decision that the termination of Father's parental rights was in the best interest of the Children.

---

[19] *Lane v. Div. of Family Serv.*, 2014 WL 1272264 (Del. Mar. 27, 2014).

(22) Having carefully reviewed the parties' positions and the record on appeal, the Court can discern no abuse of discretion in the Family Court's factual findings and no error in the court's application of the law to the facts when terminating Father's parental rights. We therefore conclude that Father's appeal is wholly without merit and devoid of any arguably appealable issue. We are satisfied that Counsel made a conscientious effort to examine the record and the law and properly determined that Father could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the motions to affirm filed by DFS and CASA are GRANTED. The judgment of the Family Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

/s/ Karen L. Valihura
Justice

12