**Bradley WILSON, Respondent Below, Appellant,**

v.

**DIVISION OF FAMILY SERVICES, Petitioner Below, Appellee.**

**No. 321, 2009.**

Supreme Court of Delaware.

Submitted: Nov. 25, 2009.
Decided: Jan. 26, 2010.

David J.J. Facciolo, Esquire, Minster & Facciolo, LLC, Wilmington, Delaware, for appellant.

James J. Maxwell, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Lewis H. Lazarus, Esquire and Brett M. McCartney, Esquire, Morris James LLP, Wilmington, Delaware, attorneys guardian ad litem for Mary and Irene Wilson.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

HOLLAND, Justice.

The respondent-appellant, Bradley Wilson ("Wilson"),[1] appeals from the final judgments of the Family Court terminating his parental rights over his two children, Mary and Irene. Wilson raises three arguments on appeal. First, he contends that the written consent that he submitted at the December 22, 2008 hearing is invalid under Delaware statutory law because the Family Court was required to, but did not, conduct a more detailed verbal

1. This Court *sua sponte* assigned pseudonyms to the parents, the children, and other private persons in this matter. Supr. Ct. R. 7(d).

colloquy explaining the terms of the consent. Second, he asserts that if the statute was applied correctly, his consent is invalid because the statute violates his right to due process under the United States Constitution.[2] Third, he argues that, even if the statute was properly applied and does not violate due process, his consent is invalid because the Family Court's explanation of the correct timeframe for revoking his consent at the December 22, 2008 hearing was confusing and misleading, and caused him to miss the statutory deadline for revocation.

We have concluded that each of Wilson's arguments is without merit. Therefore, the judgments of the Family Court must be affirmed.

### Facts

Nancy Sanden ("Sanden") is Mary and Irene's biological mother. In October 2006, Sanden was involved in a relationship with a man named Samuel Clifford ("Clifford"). At the time, both Mary and Irene were residing in Clifford's house. On October 26, 2006, the Department of Services for Children, Youth and their Families ("DSCYF"), a part of the Division of Family Services ("DFS"), received an urgent referral from Clifford. Clifford reported that he had lost contact with Sanden and was unable to care for Mary and Irene himself. DFS responded to Clifford's call and placed the children in foster care that evening. The next day, the Family Court removed the children from the legal custody of Sanden and Wilson, and granted legal custody to DFS.

The Family Court held the first of two Preliminary Protective Hearings on November 1, 2006. Wilson attended the hearing, and asserted confidence in his ability to care for the children. The court allowed DFS to place the children in Wilson's care while DFS retained legal custody. In early November, DFS discovered that Wilson had taken the children to his sister's home in New Jersey without permission. DFS spoke with Wilson, reminded him that he did not have legal custody of Mary and Irene, and demanded that he return the children to Delaware immediately. When Wilson refused to do so, DFS contacted New Jersey police. Wilson was arrested on a felony charge of Interference with Custody on November 14, 2006, and the children were returned to foster care.

On November 17, 2006, the Family Court held a second Preliminary Protective Hearing, and granted physical custody of Mary and Irene to DFS. Wilson did not attend the hearing because he was still incarcerated as a result of his November 14, 2006 arrest. Sanden was also unavailable for the hearing because she was participating in an inpatient drug treatment program in Philadelphia. On January 8, 2007, the Family Court held an Adjudicatory Hearing. The Family Court advised Wilson that a condition of his bail precluded him from any contact with his children. The Family Court informed Wilson that it would reinstate contact with his children if he were able to get his bail conditions modified.

On February 5, the Family Court held a Dispositional Hearing. The Family Court found that Wilson's bail conditions had been modified to allow him to have contact with the children if permitted by DFS. The Family Court also explained to both Sanden and Wilson that they had the right to file a petition to rescind DFS's custody if they felt they were able to provide adequate care for the children. Finally, the Family Court ordered both parents to re-

---

**2.** Wilson did not present a proper argument that his due process rights under the Delaware Constitution were violated. *See Ortiz v. State,* 869 A.2d 285, 291 n. 4 (Del.2005).

view and complete family case plans prepared by DFS. Under his plan, Wilson was required to maintain employment, complete parenting classes, schedule and complete mental health and substance abuse evaluations and complete domestic violence counseling.

In March 2007, pursuant to the Interstate Compact on the Placement of Children ("ICPC"),[3] DFS asked New Jersey officials to assess Wilson's home and determine if it was an appropriate residence for the children. Wilson failed to cooperate with the evaluation by New Jersey officials. As a result, New Jersey denied Delaware's ICPC request. Throughout March and April, DFS repeatedly called Wilson to encourage him to discuss his case plan. Wilson did not contact DFS, and failed to attend scheduled weekly visits with his children. In November, Wilson left New Jersey and returned to Delaware to move in with a new girlfriend.

On November 27, 2007, the Family Court held a Permanency Hearing and approved two concurrent goals: the children's reunification with their parents; and the termination of the parents' rights in favor of adoption proceedings. The Family Court found that termination was an appropriate goal because both parents had failed to complete their case plans and were still unable to care for their children.

On April 14, 2008, the Family Court held a Post Permanency Review Hearing. At the hearing, Wilson signed the case plan first developed for him by DFS in February 2007. The Family Court found that Wilson was making progress towards reunification by completing substance abuse treatment and obtaining a mental health evaluation. Further, the Family Court found that the criminal charge against Wilson for Interference with Custody had

been dismissed, and that Wilson appeared more willing to cooperate with DFS.

Under his revised case plan, Wilson had to obtain and verify meaningful employment, find stable housing, complete a psychological evaluation and recommended substance abuse treatment, meet with and follow any recommendations of a domestic violence liaison, complete parenting classes, comply with legal issues, engage in his children's therapy and visit his children weekly. DFS provided several services to help Wilson complete these goals.

Wilson did not complete his case plan. After Wilson left a job with a trucking service in March, DFS was never informed whether he found new employment. Wilson tested positive for cocaine, first in May 2008, and again in June 2008, and was summarily discharged from substance abuse treatment. Wilson refused to contact his domestic violence liaison and failed to attend parenting classes or contact the children's therapist. Wilson also refused to accommodate DFS's repeated requests to evaluate his home's suitability for the children. Finally, Wilson only occasionally attended scheduled weekly visits with his children.

DFS filed a petition to terminate Wilson's and Sanden's parental rights as a result of their failure to maintain employment and complete their case plans. The Family Court held hearings on the petition on September 29, 2008, October 17, 2008, and December 22, 2008. At the December 22, 2008, hearing, Wilson told the Family Court he wanted to consent to the termination of his parental rights.

The Family Court asked Wilson's counsel how he wanted to present Wilson's consent to the court. Wilson's attorney replied that he would submit Wilson's written consent and Wilson's oral acknowledg-

---

3. *See* Del.Code Ann. tit. 31, § 381 (2009).

ment of his written consent before the court and on the record. After conferring with counsel, Wilson submitted his written consent and provided a statement to the Family Court affirming his desire to consent to the termination of his parental rights. Both Wilson's attorney and the Family Court instructed Wilson that he had fourteen days to revoke his consent after submitting it.

At the end of the December 22, 2008, hearing, the Family Court announced it would release its findings as to the termination of Sanden's parental rights on January 16, 2009. In explaining the import of that decision, the Family Court engaged Wilson in the following exchange:

> The Court: And so you need to do that in a timely fashion. Mr. Wilson, in your situation, once you have consent, obviously, it's 14 days you have to revoke that. You have—if the Courts grants— if the Court denies the petition, the Court does not grant the Department's Petition, then your rights will still be in tact. If the Court grants the petition, because we usually do not terminate on [sic] of the parents rights without the other. So, in other words if the Court grants the Department's petition, grants the petition then your rights will be terminated as well depending on what mother's did in terms of the appeal. If it was denied, then your consent would obviously not be valid. Do you understand?

> Mr. Wilson: Yes, so, if it was denied, then I still—my parental rights would still be in tact?

At the January 16, 2009, hearing, Wilson informed the Family Court that he had changed his mind and wanted to revoke his consent. Wilson also stated that he called his attorney on January 6, the last day he could have withdrawn his consent within the fourteen-day period, but that his attorney had not gotten back to him at all that day. After hearing Wilson's request, the Family Court decided to delay its decision regarding Sanden's parental rights in order to allow Wilson to file a Motion to Vacate Consent. Wilson filed his motion on March 31, 2009. On May 4, 2009, the Family Court denied that motion, stating:

> Father's Motion to Vacate Consent is DENIED. The Court may revoke a parent's consent if the parent revokes the consent within 14 days by notifying the agency in writing or the agency and the parent agree to the revocation. In this case, Father failed to notify DSCYF in writing within 14 days of his intent to revoke his consent. Further, DSCYF was not willing to accept Father's revocation. Father has not alleged that the consent was obtained by fraud or duress.

> The Court finds that Father's consent was knowingly, intelligently, and voluntarily entered. Father had the opportunity to review the evidence presented and waived his right to recall witnesses for cross examination and to present evidence. After considering Father's motion and the response filed by DSCYF, the Court concludes that Father has failed to establish any grounds to revoke his consent. This Court has ruled that a change of heart later is not a sufficient basis to warrant granting a parents [sic] motion to revoke their consent.

### Standard of Review

Our review of the Family Court's decision to terminate an individual's parental rights involves consideration of the facts and law, as well as the inferences and

deductions made by the trial court.[4] To the extent that the issues on appeal implicate rulings of law, our review is *de novo*.[5] To the extent that the issues on appeal implicate rulings of fact, we conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly wrong.[6] This Court will not disturb inferences and deductions that are supported by the record and that are the product of an orderly and logical deductive process.[7] If the trial court has correctly applied the law, our review is limited to abuse of discretion.[8]

### Consent to Termination

This Court has held that "[f]ewer rights are more sacred than those which derive from the parent-child relationship."[9] Therefore, a consent to the termination of parental rights must be made knowingly, voluntarily and intelligently.[10] Generally, in evaluating the validity of an individual's consent, this Court must consider: first, whether it was "the product of a free and deliberate choice rather than intimidation, coercion, or deception"; and second, whether it was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."[11]

The requirements for an effective consent have been codified, with respect to the termination of parental rights, in title 13, section 1106 of the Delaware Code. The statute provides that an individual's consent to terminate parental rights, which can be either written or oral, be signed or verbally confirmed in the presence of a judge, lawyer, or other designated official.[12] Further, the official confirming a parent's consent must certify in writing or orally before the court that he or she explained the consequences of the consent to the parent, and that the parent read or understood the consent and agreed to it voluntarily.[13]

When Delaware's General Assembly amended title 13, section 1106 of the Delaware Code in 2001 to reflect its current form, the synopsis to that legislation explained that the changes were intended to better reflect the requirements that a consent to termination be knowing, voluntary and intelligent:

> The bill also tightens requirements pertaining to consents given by parents to the termination of their parental rights in a child by specifying what must be in their consent, by limiting persons authorized to take consents, and by requiring such persons to explain to the indi-

---

**4.** *Powell v. Dep't of Serv. for Children, Youth, & Their Families*, 963 A.2d 724, 730 (Del. 2008); *Solis v. Tea*, 468 A.2d 1276, 1279 (Del.1983).

**5.** *Powell v. Dep't of Serv. for Children, Youth, & Their Families*, 963 A.2d at 730–31; *see also In re Heller*, 669 A.2d 25, 29 (Del.1995); *Black v. Gray*, 540 A.2d 431, 433 (Del.1988).

**6.** *Powell v. Dep't of Serv. for Children, Youth, & Their Families*, 963 A.2d at 731; *In re Stevens*, 652 A.2d 18, 23 (Del.1995).

**7.** *Powell v. Dep't of Serv. for Children, Youth, & Their Families*, 963 A.2d at 731.

**8.** *Id.*

**9.** *Daber v. Div. of Child Protective Servs.*, 470 A.2d 723, 726 (Del.1983).

**10.** *Casner v. Div. of Family Servs.*, 2000 WL 1508794, at *1 (Del. Sept.14, 2000) (citing *Lewis v. State*, 757 A.2d 709, 715 (Del.2000)).

**11.** *DeJesus v. State*, 655 A.2d 1180, 1192 (Del. 1995) (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)).

**12.** Del.Code. Ann. tit. 13, § 1106(c) (2009).

**13.** *Id.* § 1106(d).

vidual who is executing the consent both the contents of the consent and its consequences. These procedures are to assure that any consent is given knowingly and voluntarily.[14]

Section 1106A provides that an individual's consent to terminate parental rights, verbal or written, is only valid if it contains certain statements. Many of these statements address factual information about the parent and child whose relationship is to be severed once the consent is finalized. In addition, section 1106A requires the consent to include two statements that verify that the parent understands the consequences of submitting a consent to the court:

> (6) A statement that the individual executing the consent understands that after the consent is signed and confirmed pursuant to § 1106(c) and (d) of this title, it is final and may not be revoked or set aside for any reason unless the requirements of § 1106B(a) have been met; [and]
>
> (7) A statement that the individual executing the consent understands that the termination will extinguish all parental rights and obligations [that] the individual executing the consent has with respect to the child, except for arrearages of child support.[15]

■ Wilson argues that his written consent was invalid because the trial judge did not adequately review the contents of that document with him on the record, during the December 22, 2008 hearing. In making that argument, Wilson incorrectly seeks to impose a procedural barrier on the submission to the court of a *written* consent, which is *only* required where a parent's consent is *verbal.* Title 13, section 1106 of the Delaware Code provides: "The Court may accept a parent or guardian's *verbal consent* after a verbal review on the record of the information required pursuant to § 1106A of this title." [16] The statute does not impose this procedural requirement on the submission of a parent's written consent, which, by statute, must already contain all of the information that would be required in that verbal colloquy. Accordingly, section 1106 contemplates either a written or verbal consent, but does not require the Family Court to conduct a verbal review or colloquy after the submission of a *written* consent.

### Statute Properly Applied

■ When Wilson did not attend the first day of TPR proceedings on September 29, 2008, the Family Court discharged his court-appointed attorney. The Family Court re-appointed the same attorney to represent Wilson after Wilson appeared for the second day of the TPR proceeding on October 17, 2008. The Family Court scheduled a third hearing day on December 22, 2008, to allow Wilson's counsel the opportunity to review the entire record and present a defense to termination.

At the hearing on December 22, 2008, Wilson's attorney explained to the trial judge that Wilson wanted to consent to the termination of his parental rights. His counsel stated that he had read and explained each part of the consent document to Wilson, which they both executed on December 21, 2008:

> I've had an opportunity with my client to re-listen to the tapes from the hearing. Two days of tapes is what I recall it being, almost a full two days. I also had

---

**14.** H.B. 154, 141st Gen. Assem. (2001) (Synopsis).

**15.** Del.Code Ann. tit. 13, § 1106A (2009).

**16.** Del.Code Ann. tit. 13, § 1106(c) (2009) (emphasis added).

the opportunity to talk to my client with the guardian *ad litem* last week to discuss in general the case. And I've also had the opportunity to meet with my client at least twice since then to discuss whether or not my client feels it's appropriate to consent.... And that even though we would have been able to present evidence that my client has been improving himself drastically. In fact, he's been clean for months now, as far as any use of drugs. That, my client wouldn't be able, as of today, to take over the responsibilities immediately of being a parent.... And though he does feel very bittersweet about this, that because he loves the kids, he's willing to consent.

At the December 22, 2008, hearing, Wilson confirmed to the Family Court, on the record, that he consented to terminate his parental rights. The written consent covered all of the statutory elements which were required to make it valid, pursuant to section 1106A. In particular, Wilson acknowledged within the written consent that he understood he was giving up his parental rights, the consequences of this decision, and that his decision was final and could not be revoked unless he notified DFS within fourteen days of its execution. In view of Wilson's written consent to termination, his attorney withdrew all pending motions and did not present any witnesses in opposition to DFS's petition for termination.

The record reflects that the Family Court correctly applied the law in accepting Wilson's written consent to terminate his parental rights pursuant to title 13, sections 1106 and 1106A of the Delaware Code. There are no facts in the record to suggest that Wilson misunderstood or misapprehended the nature and consequences of his consent. Nor does a review of the record of the December 22, 2008 hearing suggest that his consent to terminate his parental rights was not the product of a "free and deliberate choice rather than intimidation, coercion or deception." [17] Therefore, Wilson has not demonstrated that the Family Court abused its discretion in accepting the submission of his written consent and verbal affirmation of that written consent to terminate his parental rights.

### Wilson Received Due Process

■ Wilson argues, in the alternative, that the Delaware statutes permitting termination of parental rights by written consent do not protect a parent's due process rights under the United States Constitution. This Court has held that the waiver of parental rights must be knowing, intelligent and voluntary to be effective.[18] Wilson submits that a verbal, judicial colloquy, similar to those given to criminal defendants, must be tendered before a valid waiver of parental rights can be effectuated. In support of that argument, Wilson relies upon Delaware's requirement that criminal defendants be engaged in verbal colloquies prior to entering pleas of guilty or nolo contendere or before waiving their right to counsel. For the purposes of his argument, Wilson equates the due process rights of a criminal defendant with those of a parent in a termination proceeding.

■ Although the interest of natural parents in the care and custody of their children is a fundamental right protected by the due process clause of the Four-

---

17. *DeJesus v. State,* 655 A.2d 1180, 1192 (Del. 1995) (quoting *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)).

18. *Land v. Nelson,* 2001 WL 1006238, at *2 (Del. Aug.14, 2001); *see also Casner v. Div. of Family Servs.,* 2000 WL 1508794, at *1 (Del. Sept.14, 2000).

teenth Amendment,[19] a termination of parental rights proceeding differs from a criminal proceeding in many respects. In particular, a termination proceeding is civil in nature. Therefore, due process requires only that these proceedings be "fundamentally fair." [20] For example, in a termination proceeding the State must prove its allegations of unfitness by clear and convincing evidence, rather than by the beyond a reasonable doubt standard that applies in a criminal proceeding.[21]

This Court has recognized that "a termination of parental rights proceeding does not require the level of due process mandated in a criminal proceeding." [22] In *In re Carolyn S.S.*,[23] for example, this Court held that due process requires the Family Court in termination of parental rights proceedings to decide whether to appoint counsel for indigent parents at the State's expense on a case-by-case basis.[24] Other jurisdictions have also declined to extend the same level of due process rights that are required in criminal matters to proceedings involving terminations of parental rights.[25]

Section 1106(c) contemplates both written and oral consents to the termination of parental rights.[26] In either scenario, Delaware's General Assembly drafted section 1106A to identify the information necessary for a consenting party to make a knowing, intelligent and voluntary consent to the termination of his or her parental rights.[27] A written consent to termination must contain all items enumerated in section 1106A to be enforceable. Similarly, if a party wishes to render his or her verbal consent to termination, the trial judge must review the section 1106A items prior to accepting the consent.[28]

Wilson's claim is based on the theory that he was denied due process because the Family Court did not verbally repeat the identical information that Wilson had acknowledged the previous day when he executed the written consent in the presence of and with the advice of his counsel. Wilson's argument implicitly acknowledges that the information required by section 1106A is sufficient to inform a parent of what is necessary to make knowing, intelligent and voluntary decisions to consent to a termination. Accordingly, the essence of

**19.** *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

**20.** *Id.* at 754, 102 S.Ct. 1388.

**21.** *Id.*

**22.** *Farley v. Dept. of Servs. for Children, Youth, & Their Families*, 2000 WL 1862231, at * 1 (Del. Dec.15, 2000).

**23.** *In re Carolyn S.S.*, 498 A.2d 1095, 1098–99 (Del.1984).

**24.** *See also Brown v. Div. of Family Servs.*, 803 A.2d 948, 958 (Del.2002).

**25.** *See In re A.R.A.S.*, 278 Ga.App. 608, 629 S.E.2d 822, 825 (2006) (holding that parents facing termination of their parental rights are not entitled to all due process protections of a criminal defendant); *In re A.H.*, 359 Ill. App.3d 173, 295 Ill.Dec. 709, 833 N.E.2d 915,

922–23 (2005) (holding that termination of parental rights proceedings need only be "fundamentally fair" and proven by clear and convincing evidence, as opposed to the "beyond a reasonable doubt" standard); *In re Blessen H.*, 392 Md. 684, 898 A.2d 980, 994–95 (2006) (holding that a colloquy with a parent was not required prior to her waiver of a contested CINA adjudicatory hearing because she was not entitled to the same constitutional due process protections afforded a party facing confinement); *In re Ariel N.*, 892 A.2d 80, 84 (R.I.2006) (holding that no right of confrontation exists in a termination of parental rights proceeding);

**26.** Del.Code Ann. tit. 13, § 1106(c) (2009).

**27.** *Id.*

**28.** *Id.*

Wilson's due process challenge is section 1106(c)'s failure to require the Family Court to conduct a repetitive verbal colloquy in instances where a parent submits a properly executed written consent to termination.

In *Lassiter v. Department of Social Services*,[29] "the United States Supreme Court stated that due process in the United States Constitution is not a fixed concept but implicitly means 'fundamental fairness' in the context of specific circumstances."[30] Wilson's due process argument that a repetitive verbal colloquy is necessary following the execution of a valid written consent is without merit. The consent to termination provisions in the Delaware statute are "fundamentally fair." "[T]he stricter standard of waiver requiring the court to conduct a personal colloquy with a parent to establish her or his voluntary, knowing and intelligent waiver ordinarily has only been applied where the rights to be waived have been deemed to be 'fundamental,' and the proceedings have been those that could result in confinement."[31] Accordingly, we hold that Wilson's federal due process right was not violated.

### Revocation Properly Denied

Finally, in his second alternative argument, Wilson alleges that he was misled by the Family Court's statements at the December 22, 2008 hearing. Wilson points to the Family Court's explanation of the fourteen-day limit on the revocation of his consent along with the Family Court's explanation of the effect on Wilson if the Family Court did not terminate Sanden's parental rights. According to Wilson, based upon the Family Court's statements that if it were to deny DFS's petition to terminate Sanden's rights, his consent would not be valid, he believed that he could revoke his consent on January 16, 2009, when the Family Court intended to rule on the termination of Sanden's parental rights.

Wilson attributes his confusion to the fact that the Family Court informed him that his consent could be *independently* revoked by the Family Court, if the Family Court decided not to terminate Sanden's parental rights at a subsequent hearing. Separate from its discussion of Wilson's consent to terminate his parental rights, the court announced that it would release its findings as to the termination of Sanden's parental rights on January 16, 2009. In this context, the Family Court explained to Wilson that the court "usually [does] not terminate on [sic] of the parent's rights without the other." Therefore, the court informed Wilson that if it decided on January 16, 2009, to reject DFS's petition to terminate Sanden's rights, thereby leaving her rights intact, his parental rights would likewise remain intact.

Wilson's "confusion" argument is not supported by the record. The Family Court's instructions mirrored the statements contained in paragraph 12 of Wilson's signed and acknowledged written consent:

12. This consent may be revoked if a Court of competent jurisdiction decides

---

**29.** *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).

**30.** *Brown v. Div. of Family Servs.*, 803 A.2d 948, 958 (Del.2002) (quoting *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. at 24–25, 101 S.Ct. 2153).

**31.** *In re Blessen H.*, 392 Md. 684, 898 A.2d 980, 995 (2006) (collecting cases). This Court has held that an indigent obligor facing incarceration as a sanction in a State-initiated civil contempt proceeding for failure to pay court-ordered child support had a due process right to appointed counsel at State expense. *Black v. Div. of Child Support Enforcement*, 686 A.2d 164 (Del.1996).

not to terminate the other parent's rights to this children [sic].

The instructions were also consistent with the declaration in title 13, section 1106A(b)(2) of the Delaware Code that the Family Court has discretion in certain situations to revoke an individual's consent: "The consent may be revoked if: ... A court decides not to terminate another individual's parental rights in the child." [32] The Family Court ultimately decided to grant DFS's petition to terminate Sanden's parental rights. Its separate instruction to Wilson regarding this independent ground for revocation of his consent, therefore, never became relevant.

Wilson was aware that he had fourteen days from the December 22, 2008 hearing to revoke his consent. First, Wilson's written consent, which he acknowledged and submitted to the Family Court at the December 22, 2008 hearing, stated, in part:

> 7. I understand that after this consent is signed by me and confirmed pursuant to 13 *Del. C.* § 1106(c), this consent is final and may not be revoked or set aside for any reason unless the requirements of 13 *Del. C.* § 1106B(a) have been met; specifically that:
>
> a. Within fourteen (14) days of executing this consent, I notify in writing the agency or individual to which the parental rights have been transferred that I revoke the consent;
>
> b. I comply with any other instructions for revocation which were specifically set forth in the consent; or
>
> c. The agency or individual that accepted my consent, and I, agree to its revocation.

Second, the Family Court verbally repeated to Wilson at the December 22, 2008, hearing that he had fourteen days

from the date of that hearing in which to revoke his consent.

 The record reflects that the Family Court did not erroneously instruct Wilson regarding the time he had to revoke his consent. Instead, the record demonstrates that Wilson had a change of heart after the expiration of the time to revoke his consent. Absent a showing of fraud or duress, a change of heart after the expiration of the fourteen day statutory period is an insufficient basis for revoking a properly executed consent.[33] The record supports the Family Court's determination that Wilson's attempted revocation was untimely, and Wilson has not alleged any fraud or duress in the execution of his consent. Therefore, the Family Court properly denied Wilson's motion to vacate his consent to termination.

### Conclusion

The Family Court judgments terminating Wilson's parental rights as to the two minor children are, therefore, AFFIRMED.

---

**32.** Del.Code Ann. tit. 13, § 1106A(b)(2) (2009) (citing 73 Del. Laws, c. 171, § 10).

**33.** *D.B.Y. v. D. R., Jr.,* 2004 WL 1147133, at *2 (Del.Fam. Mar.1, 2004).