IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARIUS BLACK,[1] | § | |
| | § | No. 339, 2019 |
|     Respondent Below, | § | |
|     Appellant, | § | |
| | § | |
|     v. | § | Court Below–Family Court |
| | § | of the State of Delaware |
| DEPARTMENT OF SERVICES FOR | § | |
| CHILDREN, YOUTH AND THEIR | § | File No.      19-02-06TN |
| FAMILIES (DSCYF), | § | Petition No.  19-04579 |
| | § | |
|     Petitioner Below, | § | |
|     Appellee. | § | |
| | § | |
| IN THE INTEREST OF: | § | |
| Hayden Peters | § | |

Submitted: January 28, 2020
Decided: April 8, 2020

Before **SEITZ**, Chief Justice; **TRAYNOR** and **MONTGOMERY-REEVES**, Justices.

## ORDER

Upon consideration of the appellant's brief filed under Supreme Court Rule 26.1(c), his attorney's motion to withdraw, the appellee's response and motion to affirm, and the Child's attorney's response, it appears to the Court that:

---

[1] The Court previously assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).

(1) The Family Court terminated the parental rights of the appellant, Marius Black ("the Father"), in his minor daughter ("the Child") by order dated July 8, 2019.[2] The Father appeals.

(2) In April 2018, the Department of Services for Children, Youth and Their Families ("DSCYF") opened a treatment case involving the Child, born in 2017, and the Child's mother ("the Mother") after receiving a report that there were concerns for the safety of the Child because of drug use in the home. DSCYF put a safety plan in place, providing that the Child was not to have unsupervised contact with the Mother. In May 2018, DSCYF received an urgent hotline report that the Mother was under the influence of drugs and had thrown the Child to the ground repeatedly. DSCYF petitioned the Family Court for an *ex parte* order for custody of the Child. In its petition, DSCYF averred that it had been unable to locate the Father in the course of its open treatment case to assess his appropriateness as a caregiver for the Child. The court granted custody of the Child to DSCYF on May 4, 2018. With the filing of DSCYF's dependency and neglect petition, the mandated hearings ensued.[3]

---

[2] The Family Court's order also terminated the parental rights of the Child's mother, who is not a party to this appeal. We only recite the facts in the record as they relate to the Father's appeal.

[3] When a child is removed from home by DSCYF and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules. 13 *Del. C.* § 2514; Del. Fam. Ct. R. 212-219.

(3)     The Family Court held a preliminary protective hearing on May 9, 2018.  The Child had been placed with her maternal grandmother ("the Maternal Grandmother").  The Father was not present.  DSCYF proffered that the Father had been contacted and was planning to attend a team meeting the following day.  The Father arrived at the conclusion of the hearing and was given notice of the adjudicatory hearing.

(4)     The Family Court held an adjudicatory hearing on June 6, 2018.   The Father arrived twenty minutes late.  DSCYF had concerns about the Father because, although he had regular contact with the Child, he had been unaware of DSCYF's open treatment case concerning the Child.  DSCYF also had misgivings about the Father's history of drug use and his lack of knowledge of the Mother's substance abuse history.  The Father testified that he was receiving regular substance abuse treatment and that he resided with his sister or, on occasion, with his mother.  The Father stipulated that the Child was dependent in his care to allow DSCYF the opportunity to investigate whether his sister's home was an appropriate placement and to explore the Father's ability to provide for the Child's daycare needs. Following the hearing, the Family Court appointed counsel to represent the Father. The Family Court found that DSCYF had made reasonable efforts to prevent the unnecessary removal of the Child from the home and had exercised due diligence in

identifying and notifying the Child's family members of the dependency and neglect proceedings.

(5) The Family Court held a dispositional hearing on July 3, 2018. The Child had been removed from the Maternal Grandmother's home and placed with a foster family. The Father was living with his sister, with whom DSCYF had concerns because she had a lengthy DSCYF history. The Father had lost his cell phone, which made it difficult for him to receive services and to schedule visits with the Child. The Father's case plan was admitted into evidence. The case plan required that he: (i) undergo a substance abuse evaluation and follow any recommendations for treatment, (ii) complete parenting classes, and (iii) work with a family interventionist to obtain suitable housing and stable employment. The Child was doing well in foster care. The Family Court found that DSCYF was making reasonable efforts toward reunification.

(6) On September 25, 2018, the Family Court held a review hearing. The Father was visiting with the Child, working for a temp agency, and had started parenting classes. But the Father continued to reside with his sister, with whom, according to DSCYF, it would not be appropriate for the Child to reside. The Father tested positive for marijuana and PCP when he appeared for his drug and alcohol evaluation. DSCYF was concerned that he was under the influence at his last visit

4

with the Child. The Child continued to do well in the foster home. The Family Court found that DSCYF was making reasonable efforts toward reunification.

(7) The Family Court held another review hearing on December 17, 2018, and the Father failed to appear. Although he was on target to complete parenting classes at the end of that month, the Father had failed to follow up with substance abuse treatment, had not been meeting with his family interventionist, had missed a team meeting, was unemployed, and continued to reside with his sister. A number of visits with the Child had to be cancelled after the Father failed to confirm them. The Child continued to do well in the foster home. The Family Court found that DSCYF had made reasonable efforts to reunify the family.

(8) On February 15, 2019, DSCYF filed a motion to change the goal from reunification to termination of parental rights for the purpose of adoption. On March 12, 2019, the Family Court held another review hearing. Although the Father had completed his parenting classes and semi-regularly attended visits with the Child, he had been discharged from substance abuse treatment due to lack of contact. When he returned for an intake assessment, he tested positive for marijuana and was referred to treatment. The family interventionist had scheduled four meetings with the Father and he did not attend any of them. He remained unemployed and continued to reside with his sister. The Child continued to thrive in foster care. At

the conclusion of the hearing, the court granted DSCYF's motion to change the goal and scheduled a termination of parental rights ("TPR") hearing.

(9) At the June 21, 2019 TPR hearing, the Family Court heard testimony from the Father, the Mother, the DSCYF treatment and permanency workers, each parent's family interventionist, the Mother's substance abuse counselor, and the Child's court-appointed special advocate. The testimony reflected that the Father's lack of a cellular phone hindered his ability to make progress on his case plan and complicated scheduling visits with the Child. Although the Father was appropriate during visits and the Child was bonded to him, the Father's attendance at visits had been inconsistent. The Father had attended twenty-nine of a possible forty-two visits with the Child. Of the visits he missed, he failed to confirm eleven of the visits and was a no-show for two visits. In April 2019, it appeared that the Father was under the influence of drugs at one visit—he appeared dazed and spent a portion of the visit coloring by himself.

(10) The Father testified that he continued to live with his sister and that he considered her home to be an appropriate living environment for the Child. DSCYF maintained, however, that the sister's criminal background and history with DSCYF weighed against placement of the Child in her home. The Father admitted that he was still using marijuana but stated that he was now seeking help for his substance abuse problem. The Father claimed he was working under the table for an unnamed

6

employer and earning approximately $150.00 per week. The Family Court also heard testimony regarding DSCYF's unsuccessful efforts to find another relative placement for the Child.

(11) Following the hearing, the Family Court issued a written decision, finding that the Father had failed to plan adequately for the Child's physical and emotional needs.[4] The Family Court also found that the Child had entered DSCYF's care and had been in care for more than one year,[5] the Father was not able or willing to assume promptly legal and physical custody of the Child and to pay for the Child's support,[6] and failure to terminate the Father's rights over the Child would result in continued emotional instability or physical risk to her because of the Father's on-going inability to provide consistently for her care.[7] The Family Court next found that DSCYF had made reasonable efforts to reunify the family. Finally, the Family Court considered the best interests factors under 13 *Del. C.* § 722 and found that termination of parental rights was in the Child's best interests.[8]

(12) On appeal, the Father's counsel filed an opening brief and a motion to withdraw under Supreme Court Rule 26.1(c). The Father's counsel asserts that she has reviewed the record and has determined that no arguable claim for appeal exists.

---

[4] 13 *Del. C.* § 1103(a)(5).
[5] 13 *Del. C.* § 1103(a)(5)a.1.
[6] 13 *Del. C.* § 1103(a)(5)a.4.
[7] 13 *Del. C.* § 1103(a)(5)a.5.
[8] 13 *Del. C.* § 1103(a).

The Father's counsel informed the Father of the provisions of Rule 26.1(c), and provided her with a draft of the 26.1(c) brief and a copy of her motion to withdraw. The Father provided one point for the Court's consideration, which counsel incorporated in her Rule 26.1(c) brief. The Father asks this Court to consider the following point: he is able to provide for the Child and get the Child the things she needs. DSCYF and the Child's Attorney have responded to the Rule 26.1(c) brief and have moved to affirm the Family Court's judgment.

(13) On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[9] We review legal rulings *de novo*.[10] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[11] If the trial judge has correctly applied the law, then our standard of review is abuse of discretion.[12] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[13]

(14) The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[14] First, the court must determine

---

[9] *Wilson v. Division of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).
[10] *Id.* at 440.
[11] *Id.*
[12] *Id.*
[13] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[14] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).

whether the evidence presented meets one of the statutory grounds for termination.[15] If the Family Court finds a statutory basis for termination of parental rights, the court must determine whether, under 13 *Del. C.* § 722, severing parental rights is in the best interests of the child.[16] Both of these requirements must be established by clear and convincing evidence.[17]

(15) After careful consideration of the parties' respective positions on appeal and a thorough review of the record, the Court has determined that this appeal should be affirmed on the basis of the Family Court's thorough and well-reasoned July 8, 2019 decision. We find no error in the Family Court's application of the law to the facts. The Family Court found that the evidence was clear and convincing that the Father had failed to plan adequately for the Child's needs, that the Child had been in DSCYF custody in excess of one year, that the Father was unable to assume prompt legal and physical custody of the Child and to pay for the Child's support, that failure to terminate the Father's rights would result in the Child's continued emotional instability or physical risk, and that termination of the Father's rights was in the best interests of the Child. Those conclusions are well-supported by the record. To the extent that the Father argues that he is now capable of caring for the

---

[15] *Id.* at 537. *See also* 13 *Del. C.* § 1103(a) (enumerating the grounds for termination of parental rights).

[16] *Shepherd*, 752 A.2d at 537.

[17] *Powell v. DSCYF*, 963 A.2d 724, 731-32 (Del. 2008).

9

Child, an appeal is heard on the evidence submitted to the trial court, and we cannot consider any new claim of financial stability.[18]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. Counsel's motion to withdraw is moot.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[18] Del. Supr. Ct. R. 8 ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented."); *Delaware Elec. Coop., Inc. v. Duphily*, 703 A.2d 1202, 1206 (Del. 1997) ("It is a basic tenet of appellate practice that an appellate court reviews only matters considered in the first instance by a trial court. Parties are not free to advance arguments for the first time on appeal.").