IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JACK BUTLER,[1] | § | |
| | § | No. 153, 2020 |
| Respondent Below, | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below–Family Court |
| | § | of the State of Delaware |
| MEGAN EVANS and TIMOTHY | § | |
| DREYFUS, | § | File No. 19-03-11-TN |
| | § | Petition No. 19-08228 |
| Petitioners Below, | § | |
| Appellees. | § | |

Submitted: November 6, 2020
Decided: January 25, 2021

Before **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices.

## ORDER

After careful consideration of the parties' briefs and the Family Court record, it appears to the Court that:

(1) The respondent-appellant, Jack Butler (the "Father"), appeals the Family Court's February 24, 2020 order terminating his parental rights in his minor daughter (the "Child"). For the reasons that follow, we affirm the judgment of the Family Court.

(2) On January 26, 2017, the Father was arrested for the murder of the Child's mother (the "Mother"). The Father subsequently pleaded guilty to second

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

degree murder and possession of a firearm during the commission of a felony. He is currently serving a thirty-five year prison sentence.

(3) After the Mother's murder, the Child, then six years old, lived with her paternal grandparents and visited regularly with her maternal grandmother (the "Maternal Grandmother") and step-grandfather (together, the "Maternal Grandparents") under an interim guardianship order dated March 22, 2017. By stipulation and order dated August 22, 2017 ("the Guardianship Order"), the Family Court (i) granted guardianship of the Child to the Maternal Grandparents, (ii) established a visitation schedule for the Child's paternal grandparents, and (iii) gave the Child's counselor the sole and absolute discretion to review the Father's communications with the Child and to determine when and in what manner the Child may have direct contact with the Father.

(4) A year and a half later, the Maternal Grandparents filed a petition for the termination of the Father's parental rights along with a petition to adopt the Child. The petition cited three grounds for terminating the Father's rights: intentional abandonment, unintentional abandonment, and failure to plan adequately for the Child's physical needs or mental and emotional health and development. The Family Court ordered a social study and appointed counsel to represent the Father and the Child.

2

(5)     At termination of parental rights ("TPR") hearing, the Family Court heard testimony from the social worker who completed the social study, the Maternal Grandmother, the Child's therapist, and the Father.  The social study was admitted into evidence.  The evidence fairly reflected that, although the Child had suffered serious trauma requiring long-term therapy as a result of her Mother's sudden death, the Child was doing well in the Maternal Grandparents' care.  The Child visited with the paternal grandparents regularly. Evidence was presented suggesting that the Father had attempted to communicate with the Child through the parental grandparents, in violation of the Guardianship Order.

(6)     Both the Father and the Maternal Grandmother testified that, prior to the Father's arrest and incarceration, the Child and the Father had a close relationship.  Although the Father had attempted to maintain contact with the Child by writing to her, his letters had not been shared with the Child because her therapist did not consider them to be age-appropriate.  The Child's therapist opined that it was possible that the Child could have contact with the Father in the future but, because the appropriateness of such contact should be guided by the Child's development in therapy as well as the Father's participation in therapy, it was not possible to put a timeline on when that contact would—or should—take place.  At the time of the TPR hearing, the Father had not sought out counseling programs in prison, and the Father did not dispute that he had not had contact with the Child since his arrest

3

almost three years prior. Finally, the evidence established that the Father had sold a house while incarcerated but had not shared any of the proceeds of the sale, however small, with the Maternal Grandparents.

(7) Following the TPR hearing, the Family Court issued a written decision terminating the Father's parental rights in the Child. The Family Court found the evidence clear and convincing that the Father had intended to abandon the Child[2] and that, for the six consecutive months in the year preceding the filing of the TPR petition, he had failed to communicate or visit regularly with the Child, and that he was unable to assume legal and physical custody of the Child.[3] In the alternative, the Family Court found that the Maternal Grandparents had proved by clear and convincing evidence that the Father had unintentionally abandoned the Child.[4] The Family Court found that the Maternal Grandparents had satisfied both prongs of the unintentional abandonment analysis. First, the court found that, for a period of eighteen months prior to the filing of the TPR petition: (i) the Father had failed to communicate with the Child in a manner that was in compliance with the Guardianship Order; (ii) although the Father testified that he had filed a motion for visitation, the motion had been returned to him, presumably for a deficiency, and the court had no record of such a motion; and (iii) the Father was unable to assume

---

[2] 13 *Del. C.* § 1103(a)(2)a.
[3] *Id.* at § 1103(a)(2)a.2.
[4] *Id.* at § 1103(a)(2)b.

4

physical custody of the Child because of his incarceration.[5] Second, the court found that (i) the Father was unable to promptly assume physical custody of the Child (again, because of his incarceration); (ii) placing the Child in the Father's custody would pose a risk of psychological harm to the Child's well-being based on the Father's behavior after the Child's birth; and (iii) failure to terminate the Father's rights would be detrimental to the Child.[6]

(8)     The Family Court next concluded that termination of the Father's parental rights was justified because the Maternal Grandparents had proved by clear and convincing evidence that the Father had failed to plan adequately for the Child's physical and emotional needs.[7] In reaching this conclusion, the Family Court noted that the parties did not dispute that the Child had resided with the Maternal Grandparents for over one year,[8] and that the evidence showed by clear and convincing evidence that the Father was incapable of caring for the Child's physical needs and emotional health.[9] The Family Court observed that the Father's conviction for the Mother's murder rendered him a perpetrator of domestic violence, resulting in a presumption that precluded him from having legal and physical custody of the Child.[10]

---

[5] *Id.*
[6] *Id.*
[7] *Id.* at § 1103(a)(5).
[8] *Id.* at § 1103(a)(5)b.1.
[9] *Id.* at § 1103(a)(5)b.2.
[10] *Id.* at §705A.

(9) Finally, the Family Court considered the best-interests factors under 13 *Del. C.* § 722 and found, by clear and convincing evidence, that termination of the Father's parental rights was in the Child's best interests. In doing so, the Family Court found that, with the exception of the Father's wishes and the mental and physical health of the parties, the best-interests factors weighed in favor of termination of the Father's parental rights. This appeal followed.

(10) On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[11] We will not disturb the Family Court's rulings on appeal if the court's findings of fact are sufficiently supported by the record and result from an orderly and logical reasoning process.[12] We review legal rulings *de novo*.[13] If the trial judge has correctly applied the law, then our standard of review is abuse of discretion.[14] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[15]

(11) The Family Court must conduct a multistep analysis when making the decision to terminate a parent's rights in his minor child.[16] First, under 13 *Del. C.* § 1103, the Family Court determines whether the petitioner has established that there

---

[11] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).
[12] *Id* at 440.
[13] *Id.*
[14] *Id.*
[15] *Wife (J.F.V.) v. Husband (O. W. V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[16] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).

is a statutory ground for termination.[17]  The Father does not challenge the Family

Court's ruling that the Maternal Grandparents established by clear and convincing

evidence a statutory ground for the termination of his parental rights.

(12)  The next inquiry requires the Family Court to determine whether

severing the parental rights is in the best interests of the child.[18]  Under the best-

interests standard, there must be "clear and convincing evidence that termination of

parental rights is essential to the child's welfare."[19]  The factors enumerated in 13

*Del. C.* § 722(a) govern the Family Court's best-interests analysis in a TPR

proceeding.  The Family Court, considering all relevant evidence, weighs each factor

as appropriate in order to arrive at a decision that reflects the child's best interests.

The Father argues that the Family Court improperly weighed each and every factor

that the court found weighed in favor of termination.  Those factors include:  the

Father's wishes, the Child's wishes, the interaction and interrelationship of the Child

with her relatives, the Child's adjustment to her living arrangements, the parties'

mental and physical health, the Father's past and present compliance with his

parental responsibilities, and evidence of domestic violence.

(13)  After a thorough review of the record, including the transcript of the

TPR hearing and the social study, we conclude that, with one quibble, the Family

---

[17] *Id.* at 537.
[18] *Id.*
[19] *Div. of Family Servs. v. Hutton*, 765 A.2d 1267, 1272 (Del. 2001).

7

Court's best-interests finding was the product of an orderly and logical reasoning process. A review of the Family Court's analysis follows.

(14) The Family Court, noting that the Father objected to the termination of his parental rights, found that the first factor—the parents' wishes—did not weigh in favor of termination.

(15) The Family Court found that the second factor—the Child's wishes—weighed in favor of termination of parental rights. The Father argues that the Family Court improperly gave weight to the implication by the Child's Attorney that the Child desires to call the Maternal Grandmother "Mom." We agree on this point. This purported fact was mentioned by the Child's Attorney when he asked the Father if he was aware that the Child wants to call the Maternal Grandmother "Mom." The Father answered in the negative, and the record does not reflect any other mention of this supposed wish of the Child's. Of course, lawyers' questions are not evidence. Thus, the Family Court's finding on this point was not supported by the evidence. Still, the Maternal Grandmother's testimony—taken together with the Child's therapist's testimony, the social study, and the Child's Attorney's support of the TPR petition—was more than sufficient to support a finding that the Child's wishes weighed in favor of termination.

(16) As to the third factor—the Child's interaction and interrelationship with her relatives—the Family Court did not err in finding that this factor weighed in

8

favor of termination: the Child does not have a relationship with the Father because the Father's efforts to communicate with her have been screened out by her therapist, the paternal grandparents have accepted written communications and gifts directed to the Child from the Father in violation of the Guardianship Order, and the Child has a close and loving relationship with the Maternal Grandparents. Likewise, the Family Court's finding that the fourth factor—the Child's adjustment to her home and community—weighed in favor of termination of parental rights is well-supported by the record.

(17) Contrary to the Father's position on appeal, the Family Court did not find that the fifth factor—the mental and physical health of all individuals involved—weighed in favor of termination. As to the sixth factor—the Father's past and present compliance with his rights and responsibilities under 13 *Del. C.* § 701—we find that the Family Court did not err by giving more weight to the Father's present ability to provide for the Child versus his prior ability, especially where, as here, there is no evidence that the Father would be able to provide for the Child for any period of time before her eighteenth birthday.

(18) The Family Court also found that the seventh factor—evidence of domestic violence—weighed in favor of termination of the Father's parental rights. Although the Father argues that any speculative evidence that the Child was exposed to domestic violence should not be weighed against the Father, and the Father

9

disputes prior allegations of domestic violence in his reply brief,[20] it is evident that the Father's act of killing the Mother was sufficient to support the Family Court's conclusion that this factor weighed in favor of termination.[21] It follows that the Family Court also did not err in finding that the final factor—the criminal history of the parties—weighed in favor of termination. Even weighing the Father's wishes against termination of his parental rights and considering the physical and mental health of the individuals involved a neutral factor, the remaining factors (the second, third, fourth, sixth, seventh, and eighth factors) support the Family Court's finding, by clear and convincing evidence, that termination of the Father's parental rights was in the Child's best interests. We therefore affirm the Family Court's termination of the Father's parental rights.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[20] Against counsel's advice, the Father filed a *pro se* reply brief, in which he reiterates his love of the Child and lays partial blame for the Mother and the Father's "tumultuous relationship" at the Mother's feet.

[21] As the Family Court noted, the Father is a perpetrator of domestic violence as defined by statute. 13 *Del. C.* § 703A(b) (defining "perpetrator of domestic violence" as a parent who has been convicted of—among other things—any felony-level offense committed against the other parent of a child).

10