IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NATALIE ANDERSON,[1] | § | No. 206, 2023 |
| | § | |
| Respondent Below, | § | Court Below—Family Court |
| Appellant, | § | of the State of Delaware |
| | § | |
| v. | § | File No. 22-06-03TS |
| | § | |
| DIVISION OF FAMILY SERVICES | § | Petition No. 22-12290 |
| and OFFICE OF CHILD ADVOCATE, | § | |
| | § | |
| Petitioners Below, | § | |
| Appellees. | § | |
| | § | |

Submitted: November 1, 2023
Decided: January 2, 2024

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## <u>**ORDER**</u>

After consideration of the appellant's brief and the motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the responses, and the Family Court record, it appears to the Court that:

(1)    The appellant ("Mother") filed this appeal from the Family Court's order dated May 15, 2023, that terminated Mother's parental rights as to her child born in October 2020 (the "Child"). The Family Court's order also terminated the parental rights of the Child's father ("Father"). Father has not appealed, and we therefore focus on the facts in the record as they relate to Mother's appeal.

---

[1] The Court previously assigned pseudonyms to the appellant pursuant to Supreme Court Rule 7(d).

(2) Mother's counsel has filed a brief and a motion to withdraw under Supreme Court Rule 26.1(c). Mother's counsel asserts that, based upon a conscientious review of the record, there are no arguably appealable issues. Counsel informed Mother of the provisions of Rule 26.1(c) and provided her with a copy of the motion to withdraw and the accompanying brief. Counsel also informed Mother of her right to supplement counsel's presentation. Mother provided points for the Court's consideration. The Department of Services for Children, Youth and Their Families, Division of Family Services ("DFS") as appellee and the Child's attorney from the Office of the Child Advocate have responded to the Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3) The Child was born in October 2020; he was Mother's fifth child. DFS filed a petition for custody, alleging that Mother had tested positive for opiates, fentanyl, and methadone at the Child's birth and DFS was awaiting test results regarding the Child's exposure; DFS had received hotline reports regarding potential domestic violence between Mother and Father; Mother and Father had pending criminal charges; and family members had guardianship of three of Mother's four older children. When DFS became involved, the fourth older child (the "Child's Brother"), who was three when the Child was born, went to stay with his paternal grandmother under a safety plan. The paternal grandmother had considered also allowing Mother and the Child to stay with her under a safety plan, but she had ultimately declined because the responsibility would be overwhelming. The Family Court awarded custody of the Child to DFS on an *ex parte* basis, and he was placed in a foster home when he was discharged from the hospital.

(4) The mandated hearings ensued.[2] At the preliminary protective hearing on October 22, 2020, the court appointed counsel for Mother. Counsel continued to represent Mother throughout the proceedings. After consultation with her counsel, Mother agreed that there was probable cause to find that the Child was dependent and that it was in his best interest temporarily to remain in DFS's custody. At an adjudicatory hearing on December 10, 2020, Mother again agreed that the Child would be dependent in her care.

(5) DFS developed a case plan for Mother, and the Family Court found the case plan to be reasonable. The case plan required Mother to undergo a mental health evaluation; continue her substance abuse treatment, which included methadone-assisted treatment; complete a parenting-skills program; work with a family interventionist; complete domestic violence counseling if recommended; maintain employment and housing; attend the Child's medical appointments; and participate in visitation with the Child.

(6) By April 22, 2021, Mother had completed her mental health evaluation. The evaluating psychologist opined that substance abuse was the main obstacle to Mother's ability to discharge her parenting responsibilities. He also expressed concern about potential domestic violence dynamics between Mother and Father; DFS thereafter required that Mother complete domestic violence treatment as part of her case plan. Mother was engaged in an intensive outpatient substance abuse program and had begun testing negative

---

[2] *See Kline v. Del. Div. Family Servs.*, 2023 WL 2259101, at *1 n.3 (Del. Feb. 28, 2023) ("When a child is removed from home by DFS and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules." (citing 13 *Del. C.* § 2514; DEL. FAM. CT. R. CIV. PROC. 212-19)).

3

for illegal substances as of March 24, 2021.  Mother's visits with the Child went very well; a family interventionist testified that Mother was very supportive of and engaged with the Child during visits.  Indeed, throughout the proceedings various witnesses testified that Mother was a good parent and interacted positively with the Child.

(7)  Mother continued to make significant positive steps toward completion of her case plan.  She moved into a women's recovery home; received multiple negative drug screens; made some progress with domestic violence treatment and mental health counseling; and enjoyed positive visits with the Child, including unsupervised and then overnight visits.  Moreover, the Child's Brother began living with Mother full-time at the recovery home.  At a permanency hearing on December 2, 2021, the Family Court approved a continued goal of reunification.

(8)  By the time of a post-permanency review hearing on March 3, 2022, DFS expected that the Child would be returned to Mother's care before the next hearing.  But on May 20, 2022, the Child's attorney filed a motion to change the permanency plan to termination of parental rights.  At a permanency review hearing on June 9, 2022, which Mother did not attend, an employee of the women's recovery home where Mother had been living testified that Mother had been discharged from the home because employees of the home had determined that Mother had taken extra sleeping pills and had purchased extra methadone from another client.  A DFS worker testified that Mother had moved to Bel Air, Maryland, after her discharge from the recovery home.  She had not provided any verification of employment since March, and DFS did not have any evidence that Mother was complying with the mental health or domestic violence components of her case plan.

4

Mother had not had any visits with the Child since her discharge from the recovery home. Following the hearing, the Family Court determined that the new permanency plan should be termination of parental rights because Mother had made insufficient progress on her case plan in the nineteen months that the Child had been in foster care.

(9) On June 21, 2022, DFS filed a petition for termination of parental rights ("TPR"). A TPR hearing convened on September 15, 2022, but it was rescheduled for January 5, 2023, because, among other issues, the Child's paternal grandmother, who lived in Maryland, had filed a petition for guardianship, and DFS would need to request a study under the Interstate Compact on the Placement of Children ("ICPC").[3] On January 3, 2023, Mother moved for a continuance of the rescheduled hearing because the ICPC study had not been completed. The court granted the continuance.

(10) On February 23, 2023, the Family Court held a hearing on the TPR petition and on the paternal grandmother's petition for guardianship. The court entered an order denying the petition for guardianship and terminating Mother's parental rights on May 15, 2023.[4] At the time of the TPR hearing, Mother was living with the paternal grandmother and the Child's Brother in Maryland. She was doing well in a methadone program. The Maryland ICPC study reported that the paternal grandmother's home was very clean and that Mother and the paternal grandmother appeared to have a close and positive relationship. But Maryland officials recommending denying the interstate placement because Mother, the paternal grandmother, and the paternal grandmother's husband had

---

[3] 31 *Del. C.* §§ 381-89.

[4] The denial of the petition for guardianship is not at issue in this appeal.

not completed all the paperwork required to finalize the home study, including documents regarding their finances, health status, child protective services clearance, and background check information.

(11)  In terminating Mother's parental rights, the court held that DFS had established, by clear and convincing evidence, that Mother had failed to plan adequately for the Child within the statutory timeframe.[5]  In particular, the court found that Mother did not complete the components of her case plan that required her to engage in domestic violence treatment and parenting-skills education, attend the Child's medical appointments, and participate in visits with the Child after she moved to Maryland.  The court also found that DFS had made reasonable efforts to reunify the family.  Applying the best-interest factors,[6] the Family Court found that DFS had established, by clear and convincing evidence, that it was in the Child's best interests to terminate Mother's parental rights.  Mother has appealed.

(12)  On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[7]  We review legal rulings *de novo*.[8]  We conduct a limited review of the factual findings of the trial court to assure that

---

[5] 13 *Del. C.* § 1103(a)(5).

[6] *See* 13 *Del. C.* § 1103(a) (providing that parental rights may be terminated if one of several statutory grounds is established and termination "appears to be in the child's best interest"); *id.* § 722 (setting forth factors that the court may consider when determining the best interests of a child).

[7] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).

[8] *Id.* at 440.

they are sufficiently supported by the record and are not clearly erroneous.[9] If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[10]

(13) The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[11] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[12] When the statutory basis for termination is failure to plan adequately for the child's needs, the Family Court must also find proof of at least one additional statutory condition.[13] Second, if the Family Court finds a statutory basis for termination of parental rights, then the court must determine whether terminating parental rights is in the best interests of the child.[14] Both of these requirements must be established by clear and convincing evidence.[15]

(14) Mother contends that she made substantial progress on many elements of her case plan, including substance abuse treatment; her parenting skills were not a concern throughout the dependency and TPR proceedings; moving to Maryland made it difficult to complete some elements of her case plan, such as domestic violence counseling; and she intends to move back to Delaware. After careful consideration of the parties' positions and the record on appeal, we conclude that the judgment of the Family Court should be affirmed. The Family Court's factual findings are sufficiently supported by the record and

---

[9] *Id.*
[10] *Id.*
[11] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[12] *Id.* at 537. *See* 13 *Del. C.* § 1103(a) (setting forth the grounds for termination of parental rights).
[13] 13 *Del. C.* § 1103(a)(5)a-e (listing additional conditions, including that the child has been in DFS custody for at least one year, or for six months if the child came into care as an infant).
[14] *Shepherd*, 752 A.2d at 537.
[15] *Powell v. Dep't of Servs. for Children, Youth & Their Families*, 963 A.2d 724, 731 (Del. 2008).

are not clearly erroneous, and Mother's arguments on appeal do not demonstrate otherwise. In the course of the dependency proceedings, the Family Court recognized Mother's significant progress in substance abuse treatment and other areas of her case plan, and DFS and the court gave her additional time to continue working toward reunification in light of that progress. Indeed, the Child entered DFS custody as a newborn, but DFS did not petition for termination of parental rights until he had been in DFS's custody for more than a year and a half.[16] And nine months passed between Mother's discharge from the recovery home and the TPR hearing, during which period Mother failed to demonstrate compliance with her case plan. It is unfortunate that Mother's progress was interrupted by her discharge from the recovery home and her subsequent move to Maryland, but we find no abuse of discretion in the Family Court's decision to terminate parental rights in the circumstances of this case.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

/s/ Karen L. Valihura
Justice

---

[16] *See* 13 *Del. C.* § 1103(a)(5)b (providing that parental rights as to a child that entered DFS custody as an infant may be terminated if the parent has failed to plan adequately and the child has been in DFS custody for at least six months).