IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANYA L. THOMAS,[1] | § | No. 5, 2023 |
| | § | |
| Respondent Below, | § | Court Below—Family Court |
| Appellant, | § | of the State of Delaware |
| | § | |
| v. | § | File No. 22-08-10TN |
| | § | |
| DEPARTMENT OF SERVICES | § | Petition No. 22-18508 |
| FOR CHILDREN, YOUTH, AND | § | |
| THEIR FAMILIES/DIVISION OF | § | |
| FAMILY SERVICES, | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: May 19, 2023
Decided: June 26, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## ORDER

After consideration of the appellant's brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the responses, and the Family Court record, it appears to the Court that:

(1) This is an appeal from the Family Court's order dated December 13, 2022, that terminated the appellant's ("Mother") parental rights as to her child born in April 2021 (the "Child"). The Family Court's order also terminated the parental

---

[1] The Court previously assigned a pseudonym to the appellant pursuant to Supreme Court Rule 7(d).

rights of the Child's father ("Father"), who filed a separate appeal.[2] We focus on the facts in the record as they relate to Mother's appeal.

(2) Mother's counsel has filed a brief and a motion to withdraw under Supreme Court Rule 26.1(c). Mother's counsel asserts that, based upon a conscientious review of the record, there are no arguably appealable issues. Counsel informed Mother of the provisions of Rule 26.1(c) and provided her with a copy of the motion to withdraw and the accompanying brief. Counsel also informed Mother of her right to supplement counsel's presentation. Mother did not provide any points that she wanted to present for the Court's consideration. The Department of Services for Children, Youth, and Their Families, Division of Family Services ("DFS") as appellee and the Child's attorney from the Office of the Child Advocate have responded to the Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3) Mother resided in a home with her husband and three older children. Before the Child's birth, the family had a lengthy history with DFS relating to Mother's substance abuse. At the Child's birth in April 2021, Mother and the Child tested positive for drugs, including methamphetamines and fentanyl. The hospital made a referral to DFS, which implemented a safety plan under which the Child

---

[2] This Court affirmed the termination of Father's parental rights. *Banks v. Dep't of Servs. for Children, Youth, & Their Families*, 2023 WL 3853993 (Del. June 6, 2023).

resided at a neighbor's house after her discharge from the hospital, with no unsupervised contact with Mother. After the neighbor informed DFS in July 2021 that she was no longer willing to care for the Child, DFS initiated a dependency proceeding seeking custody of the Child. The court transferred custody to DFS, and the Child was placed in a foster home.

(4) The mandated hearings ensued.[3] At the preliminary protective hearing on July 14, 2021, Mother testified that she believed the biological father of the Child was a person she knew only as "C." Her husband testified that "C" was a drug dealer. The court ordered that notice of the proceedings be provided to the unknown father by publication and ordered paternity testing as to Mother's husband.[4] Mother testified that she would be entering inpatient drug treatment later that day. The court ordered that supervised visits would be scheduled twice per week after Mother's release from treatment.

(5) Mother signed a case plan on October 18, 2021. The case plan required that Mother obtain and maintain employment with adequate income to provide food, shelter, and clothing for the Child; maintain appropriate, clean, and safe housing for

---

[3] *See Kline v. Del. Div. Family Servs.*, 2023 WL 2259101, at *1 n.3 (Del. Feb. 28, 2023) ("When a child is removed from home by DFS and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules." (citing 13 *Del. C.* § 2514; DEL. FAM. CT. R. CIV. PROC. 212-19)).

[4] At a hearing in January 2022, Mother identified Father as the Child's biological father and testified that he was incarcerated in Pennsylvania at the time. The court later adjudicated Father to be the Child's biological father, following paternity testing.

the Child; complete a mental health evaluation and follow recommended treatment, including taking prescribed medication; comply with recommended substance abuse treatment and provide negative urine screens; sign consent forms for DFS to contact mental health and substance abuse providers; complete a parenting class; attend all sessions with an assigned family interventionist; and continue to participate in visitation with the Child and have positive and appropriate visits.

(6) Following a review hearing on January 13, 2022, the Family Court determined that Mother had failed to make progress toward completion of her case plan. Specifically, the court found that Mother had not obtained employment or demonstrated income sufficient to provide for the Child and that her husband had indicated that he was not willing to provide documentation of his income to satisfy that element of the case plan. Mother also had not completed a mental health evaluation or followed recommended treatment, other than attending a single session at Savida in September 2021. Mother had not complied with substance abuse treatment or provided negative urine screens. DFS had identified certain concerns about the safety and cleanliness of Mother's home, but Mother had not allowed the family interventionist to visit the home since November 2021, nor had she attended the required meetings with the family interventionist since October 2021, with the exception of a single meeting. DFS had enrolled Mother in several parenting

4

courses, but Mother had failed to complete the courses. Mother had missed seven visits with the Child.

(7)    On April 14, 2022, Mother entered an inpatient drug rehabilitation facility, Bowling Green, after DFS had received information concerning Mother's continued drug use and Mother admitted to DFS that she had recently used heroin and/or opiates. By the time of a review hearing on April 18, 2022, Mother had not made significant progress on her case plan, except for regularly attending visits with the Child. By the time of a permanency hearing on June 28, 2022, Mother had not provided DFS with her records from Bowling Green, nor had she provided the results of any drug screenings, despite her testimony that she had been screened five times since May 10, 2022, with clean results. Moreover, Mother had been arrested for new criminal charges on June 15, 2022; had missed three out of four scheduled meetings with the family interventionist since April 22, 2022, and refused to allow the family interventionist to visit her home; had missed three out of the preceding eight scheduled visits with the Child; and had failed to satisfy other elements of her case plan. The court found similar failure to make progress toward Mother's case plan based on evidence presented during a post-permanency review hearing on September 6, 2022.

(8)    On December 13, 2022, the Family Court held a post-permanency review and TPR hearing. Mother arrived approximately two hours late for the

5

hearing. The evidence presented at the hearing reflected that Mother had urine screen results that were positive for amphetamines and cocaine on August 10, 2022, positive for amphetamines on September 7, 2022, positive for amphetamines and fentanyl on October 14, 2022, and positive for amphetamines on November 18, 2022. Mother was engaging in substance abuse treatment with CORAS Wellness, where she received daily, maintenance dosages of methadone. Although Mother testified that she engaged in monthly mental health counseling, DFS had not been able to confirm that information. Mother had not obtained employment or completed a parenting course, despite enrolling in the course three times. Mother's husband had not visited with the Child or indicated a willingness to financially support the Child. DFS had offered Mother two visits per week with the Child, but Mother had attended only eight of the twenty-seven visits that had been available since the last hearing. Mother had also recently pleaded guilty to shoplifting charges, had pending charges for driving with a suspended license, had a pending violation of probation, and had been released from incarceration only a few days before the hearing. The family interventionist testified that Mother had failed to address safety concerns in her home, including a sharp, broken glass door on the stove that created a safety hazard for a toddler.

(9) The Family Court issued a ruling from the bench at the conclusion of the hearing and entered an order terminating Mother's parental rights. The court

determined that DFS had established, by clear and convincing evidence, a statutory basis for terminating Mother's parental rights for failure to plan adequately for the Child within the statutory timeframe.[5] As to failure to plan, the court found that Mother had not satisfied the element of her case plan that required her to show that she had financial resources that would enable her to care for the Child. The court also found that Mother had not satisfied the element of her case plan regarding substance abuse, the primary reason for the Child's entry into foster care, because the test results presented, which covered the four months preceding the hearing, were positive for illegal substances. The court determined that Mother had not addressed the safety issues in her home, despite having had a year to do so. The court also found that Mother had not satisfied the element of her case plan regarding visitation with the Child and that Mother's excuses for missing the visits were not credible.

(10) The court also found, by clear and convincing evidence, that DFS had made reasonable efforts to reunify the family. Applying the best interest factors,[6] the Family Court found that DFS had established, by clear and convincing evidence, that it was in the Child's best interests to terminate Mother's parental rights. Mother had missed many visits with the Child, while the Child had formed relationships

---

[5] 13 *Del. C.* § 1103(a)(5).

[6] *See id.* § 1103(a) (providing that parental rights may be terminated if one of several statutory grounds is established and "it appears to be in the child's best interest"); *id.* § 722 (setting forth factors that the court may consider when determining the best interests of a child).

with her foster family;[7] the foster family had provided a home where the Child was safe, well nurtured, and well cared for, while Mother had not;[8] and Mother continued to incur criminal charges and incarceration.[9]

(11) On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[10] We review legal rulings *de novo*.[11] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[12] If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[13]

(12) The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[14] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[15] When the statutory basis for termination is failure to plan, the Family Court must also find proof of at least one additional statutory condition.[16] Second, if the Family

---

[7] *Id.* § 722(a)(3).

[8] *See id.* § 722(a)(4), (6).

[9] *See id.* § 722(a)(8).

[10] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).

[11] *Id.* at 440.

[12] *Id.*

[13] *Id.*

[14] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).

[15] *Id.* at 537. *See* 13 *Del. C.* § 1103(a) (listing the grounds for termination of parental rights).

[16] 13 *Del. C.* § 1103(a)(5)a-e (listing additional conditions, including that the child has been in DFS custody or placed by a licensed agency for at least one year, or for six months if the child came into care as an infant).

8

Court finds a statutory basis for termination of parental rights, then the court must determine whether terminating parental rights is in the best interests of the child.[17] Both of these requirements must be established by clear and convincing evidence.[18]

(13) Mother has not submitted any points for this Court's consideration on appeal. Mother's appointed counsel represents that she has determined that no arguably appealable issue exists. After careful consideration of the parties' positions and the record on appeal, we conclude that the judgment of the Family Court should be affirmed on the basis of the Family Court's determination, as set forth in its bench ruling of December 13, 2022, and its Order for Termination and Transfer of Parental Rights of the same date, that there was clear and convincing evidence that Mother had failed to plan adequately for the Child's needs, that DFS had made reasonable reunification efforts, and that termination of Mother's parental rights was in the best interests of the Child. Those conclusions are well-supported by the record. We therefore affirm.

---

[17] *Shepherd*, 752 A.2d at 537. *See* 13 *Del. C.* § 722(a) (listing factors for consideration when determining the best interests of the child).

[18] *Powell v. Dep't of Servs. for Children, Youth & Their Families*, 963 A.2d 724, 731 (Del. 2008).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice