IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ALBERT ALLEN,[1] | § | |
| | § | No. 132, 2023 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. 21-10-02TN |
| DEPARTMENT OF SERVICES FOR | § | Petition No. 21-23292 |
| CHILDREN, YOUTH AND THEIR | § | |
| FAMILIES, | § | |
| | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: August 30, 2023
Decided: October 17, 2023

Before **SEITZ**, Chief Justice; **LEGROW** and **GRIFFITHS**, Justices.

## ORDER

Upon consideration of the appellant's brief filed under Supreme Court Rule 26.1(c), his attorney's motion to withdraw, the response of the Department of Services for Children, Youth and their Families ("DFS"), and the response of the Office of the Child Advocate ("OCA"), it appears to the Court that:

(1) The respondent below-appellant, Albert Allen ("the Father"), appeals the Family Court's order, dated March 23, 2023, terminating his parental rights to his children Valerie (born in 2014), Albert (born in 2016), Nicole (born in 2017),

---

[1] The Court previously assigned a pseudonym to the appellant and uses pseudonyms to refer to the appellant's children in this order under Supreme Court Rule 7(d).

and Keith (born in 2018) ("the Children").  The Family Court's order also terminated the parental rights of the Children's mother ("the Mother"), who filed a separate appeal.[2]  In this appeal, we focus on the facts in the record as they relate to the Father's appeal.

(2)  On August 6, 2020, the Family Court granted DFS's emergency petition for custody of the Children by *ex parte* order.  The Family Court found that there were emergency conditions sufficient to find probable cause that the Children were in actual danger or that there was a substantial risk of danger because three-year-old Nicole was recently diagnosed with chlamydia and genital herpes and the Children were medically neglected and developmentally delayed.  The Family Court scheduled a preliminary protective hearing and appointed counsel to represent the Father.

(3)  At the preliminary protective hearing on August 12, 2020, a DFS investigator testified that Nicole was originally taken to the emergency room for a fever and rash in late July.  She was discharged, but returned the next day with stomach issues and a continuing fever.  Nicole tested positive for chlamydia and genital herpes, which likely resulted from sexual contact.  The New Castle County Police began investigating possible sexual abuse of Nicole.  The Children's

---

[2] *See Zabel v. Div. of Servs. for Children, Youth and their Families*, No. 130, 2023 (Del.).

Advocacy Center tried to interview Valerie and Albert, but their developmental delays made this impossible.

(4)    In addition to the parents, who denied having sexual contact with Nicole, the Children had been in the care of maternal relatives.  DFS was unwilling to place the Children with maternal relatives who were possible suspects in the criminal investigation.  The Children were originally placed with a paternal relative, but she could not care for the Children in addition to her own children.  The Children were currently in two foster homes located next to one another.  At the conclusion of the hearing, the Family Court found probable cause to believe that the Children were in physical, mental, or emotional danger and dependent based on the lack of sufficient explanation for Nicole having chlamydia and herpes and the Children appearing to be neglected as far as hygiene, medical care, and possibly education. The Family Court also found that it was in the best interests of the Children to be in DFS custody, that DFS had made reasonable efforts to prevent the unnecessary removal of the Children from their home, and that DFS had made reasonable efforts to place the Children in the same home.  The Family Court subsequently appointed OCA counsel to represent the Children.

(5)    At the September 24, 2020 adjudicatory hearing, the Father stipulated to the dependency of the Children based on medical care.  The doctor who treated Nicole testified that this was likely Nicole's first exposure to herpes and that the

3

incubation period for herpes is two to twenty days. The parents had reported that Mother was diagnosed with chlamydia while pregnant with Keith, but the doctor testified that it was unlikely Nicole would have acquired chlamydia or herpes from her birth. The doctor opined that it was most likely that Nicole contracted chlamydia and herpes as a result of sexual abuse. The other children did not test positive for sexually transmitted diseases.

(6) A DFS employee testified that all of the Children were behind on their medical care, suffered developmental delays, were going to be evaluated, and should be receiving some type of therapy. She also testified that the parents were not fully cooperative in providing information about how Nicole could have contracted herpes and chlamydia. The Family Court found that the Children were dependent and should remain in DFS custody. The Family Court also found that DFS had made reasonable efforts to place the Children with relatives.

(7) At the November 2, 2020 dispositional hearing, DFS submitted a case plan for the Father. The case plan required the Father to complete a mental health evaluation, follow any treatment recommendations, resolve all legal issues, work with a family interventionist, complete a parenting class, and participate in marriage counseling. The Father was employed and had provided information about his employment to DFS. The parents were living together, but not speaking because the Father had been having a sexual relationship with the maternal grandmother. In light

4

of uncertainty concerning whether the Father could read English,[3] the court directed DFS to re-present the plan at the next hearing after ensuring that the Father could understand the document in English or have it interpreted for him. There was testimony that the Children had been brought up to date on their shots and other medical needs. The Family Court found that the Children remained dependent and should remain in DFS custody. The Family Court also found that DFS was making reasonable efforts to reunify the Children with their parents.

(8) At the January 26, 2021 review hearing, the Family Court accepted the signed case plan, in English and Spanish, for the Father. The Father had a family interventionist, but was unable to complete the parenting class or mental health assessment until Spanish-speaking providers were identified. He was visiting the Children. He and the Mother were willing to do marriage counseling, although the Mother was exploring separate housing. Albert and Nicole were receiving speech therapy, physical therapy, and occupational therapy. Keith was receiving physical therapy, occupational therapy, and assistance with anxiety and social relationships. The Family Court found that the Father's progress on his case plan was satisfactory, but expressed concern about the lack of Spanish-language services for him. The

---

[3] Throughout the court proceedings, there was an interpreter for the Father.

Family Court also found that the Children remained dependent and should remain in DFS custody.

(9) The Family Court held a second review hearing on May 18, 2021. The Father was having weekly visitation with the Children, who were now residing in the same foster home. He had completed the mental health evaluation and was enrolled in a parenting class. Marital counseling had not begun because the Mother wanted to pursue therapy for herself first. The Children continued to receive therapy for their developmental delays. The criminal investigation concerning Nicole had been closed; it remained unknown how she contracted chlamydia or herpes. The Family Court found that both parents had made progress on their case plans, but noted that they needed to find appropriate housing as their current residence was too small for four children. The Family Court also found that the Children remained dependent and should remain in DFS custody. The Family Court directed DFS to submit a paper review in lieu of another review hearing as a permanency hearing would soon be needed.

(10) In the paper review, DFS reported that the Father had completed his parenting class and was having supervised visitation with the Children twice a week. DFS had substantiated both parents for sexual abuse of Nicole. The Children remained in the same foster home and were up to date on their medical treatment.

6

The Family Court adopted the paper review and scheduled a hearing for September 10, 2021.

(11) On August 18, 2021, DFS filed a motion to change the permanency plan from reunification to concurrent goals of reunification and termination of parental rights. The parents filed responses opposing the motion. OCA supported the motion.

(12) On September 10, 2021, the Family Court held a permanency hearing. The parents were residing together and looking for housing. They did not object to concurrent goals of reunification and termination of parental rights. Nicole and Albert had tested positive for genetic abnormalities that cause significant developmental delays and increased risk of mental health issues. The Family Court found that both parents had made progress on their case plans, but expressed concern for how Nicole had contracted sexually transmitted diseases and the parents' unwillingness or inability to explain how this had occurred. The Family Court granted DFS's motion to change the permanency plan to concurrent goals of reunification and termination of parental rights. DFS filed a petition for termination of parental rights on October 7, 2021, but subsequently pursued trial reunification as the parents made progress on their case plans.

(13) On January 11, May 2, October 17, and November 3, 2022, the Family Court held post-permanency review hearings. The resulting orders reflect that the

parents continued making progress on their case plans and DFS returned the Children to the parents for trial reunification on August 4, 2022. The Mother gave birth to a fifth child on August 5, 2022. DFS had suspected the Mother was pregnant, but she denied it and produced a negative pregnancy test.

(14) In late September, Albert's teacher told DFS that Albert was coming to school unclean, sleeping in class, and misbehaving. Nicole's teacher also reported that Nicole was misbehaving. During an unannounced visit to the family in November, a DFS employee observed that the house was very unclean with a smell of urine throughout. DFS also expressed concerns about a lack of food, a full-size pillow in the new baby's crib that raised concerns as to how the baby was safely sleeping, and Valerie, Albert, and Nicole not wearing their prescribed glasses. The Family Court found that the parents had made little progress on their case plans and that the Children should remain in DFS custody. The Family Court scheduled a post-permanency review hearing and termination of parental rights hearing for February 23rd and 24th. On November 7, 2022, DFS removed the Children from the parents' home and returned them to foster homes.[4]

(15) On February 23 and 24, 2023, the Family Court held a post-permanency hearing and a termination of parental rights hearing. The Family Court heard

---

[4] DFS also obtained custody of the new baby.

testimony from the Father, the Mother, two DFS employees, Nicole's kindergarten and special education teacher, and the Mother's family interventionist. The testimony reflected that the Father had completed mental health and psychosexual evaluations. The mental health evaluation recommended that he receive therapy. The Father received therapy between May 2022 and November 2022, but then stopped to begin marriage counseling that never commenced. He admitted that he was on probation in 2021 and 2022 for leaving the scene of an accident and driving without a license in Pennsylvania. In March 2022, the Father was charged with driving under the influence in Pennsylvania. That charge was outstanding at the time of the hearing. He had previously pleaded guilty to driving under the influence in 2014 or 2015.

(16) The Father had completed a parenting class and done some work with a family interventionist. The Father and the Mother had obtained appropriate housing, but it was in an unacceptable condition when DFS conducted an unannounced visit in November 2022. According to the Mother's family interventionist, the condition of the home became progressively worse during the trial reunification. A DFS employee testified that the parents rectified the condition of the home after the Children's removal. There was also testimony that the Father had a child with another woman in 2022 and might be seeking custody of that child.

9

(17) The Children were in two different foster homes and continued to receive a variety of services and therapies for their developmental delays. The Father was unable to identify the types of services and therapies the Children were receiving, but said he would pursue the appropriate ones for the Children if they were returned to him. Nicole had suffered several herpes outbreaks, including one during trial reunification when her parents did not seek treatment and instead sent her to school. Nicole's teacher testified that at the beginning of the school year when Nicole was living with her parents she would come into school very fatigued and rarely speak until after lunch. In November when Nicole was no longer living with her parents, she was less tired and more engaged in class and with her classmates. She also started coming to school with her glasses.

(18) On March 23, 2023, the Family Court issued a written decision terminating the parental rights of the Father. The Family Court found that DFS had established by clear and convincing evidence that the Father had failed to plan adequately for the Children's needs under 13 *Del. C.* § 1103(a)(5) and the Children had been in the care of DFS for more than a year. The Family Court recognized that Father had completed some elements of his case plan, but found that he did not finish his therapy, did not complete marriage counseling with the Mother, had pending criminal charges for driving under the influence, and had failed to maintain his home in a safe and appropriate condition for the Children. The Family Court also found,

10

by clear and convincing evidence, that DFS had made reasonable efforts to reunify the family. Applying the best-interest factors under 13 *Del. C.* § 722, the Family Court found that factors 1 (wishes of the parent) and 7 (evidence of domestic violence) supported denial of the petition and factors 2 (wishes of the children),[5] 3 (the interaction and relationship of the children with family members), 4 (the children's adjustment to home, school, and the community), 5 (the mental and physical health of all individuals involved), 6 (past and present compliance of the parent with the rights and responsibilities to their children under 13 *Del. C.* § 701), and 8 (criminal history of any party) supported granting the petition. The Family Court concluded that DFS had established, by clear and convincing evidence, that termination of the Father's parental rights was in the Children's best interests. This appeal followed.

(19) The Father's counsel ("Counsel") filed a brief and motion to withdraw under Supreme Court Rule 26.1(c). Counsel represents that he has made a conscientious review of the record and the law and found no meritorious argument in support of the appeal. Counsel informed the Father of the provisions of Rule 26.1(c) and provided him with a copy of the motion to withdraw and the accompanying brief. Counsel also informed the Father of his right to submit any

---

[5] In light of the youth and developmental delays of the Children, the Family Court relied on OCA's support for the petition to find that this factor supported granting the petition.

points he wished this Court to consider. The Father has submitted several points for this Court's consideration. DFS and OCA ask this Court to affirm the Family Court's termination of parental rights.

(20) The Father's points on appeal may be summarized as follows: (i) Valerie, Albert, and Nicole attended school while in their parents' care; (ii) the Children received therapy at school with Nicole and Albert also receiving therapy at home; and (iii) when DFS came to the house in November 2022, he had just come back from the grocery store and showed DFS that they had food and baby formula.

(21) This Court's review of the Family Court's decision to terminate parental rights entails consideration of the facts and law as well as the inferences and deductions made by the Family Court.[6] To the extent that the Family Court's rulings of law are implicated, our review is *de novo*.[7] The statute governing the termination of parental rights requires a two-step analysis.[8] First, the Family Court must determine whether the evidence presented meets one of the statutory grounds for termination.[9] Second, the Family Court must determine whether termination of

---

[6] *Wilson v. Div. of Fam. Servs.*, 988 A.2d 435, 439-40 (Del. 2010).
[7] *Id.*
[8] 13 *Del. C.* § 1103; *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[9] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731-32 (Del. 2008).

12

parental rights is in the best interests of the child.[10] Both of these requirements must be established by clear and convincing evidence.[11]

(22) We construe the Father's points as arguing that the Family Court erred in finding that he failed to plan adequately for the Children's needs and that termination of his parental rights was in the Children's best interests. Having considered the parties' positions and the record on appeal, we conclude that the Father's appeal is wholly without merit. There is ample evidence supporting the Family Court's termination of the Father's parental rights based on his failure to plan and that such termination is clearly in the Children's best interests. This evidence included the Father's unwillingness or inability to explain how his three-year old child contracted chlamydia and herpes, most likely as a result of sexual abuse, while in his care, failing to seek treatment for this child when she was suffering an outbreak and instead sending her to school, and failing to maintain a safe home for the Children and meet their needs during trial reunification. We find no error in the Family Court's application of the law to the facts and no abuse of discretion in the Family Court's factual findings.

---

[10] 13 *Del. C.* § 1103(a) (providing that parental rights may be terminated if one of several statutory grounds is established and "it appears to be in the child's best interest"); *id.* § 722 (setting forth factors that the court may consider when determining the best interests of a child).
[11] *Powell*, 963 A.2d at 731.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family

Court is AFFIRMED.  The motion to withdraw is moot.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice