IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| EMILY BANKS,[1] | § | No. 512, 2024 |
| | § | |
|    Respondent Below, | § | Court Below—Family Court |
|    Appellant, | § | of the State of Delaware |
| | § | |
|    v. | § | File No. CS24-01-02TS |
| | § | |
| DEPARTMENT OF SERVICES | § | Petition No. 24-01183 |
| FOR CHILDREN, YOUTH AND | § | |
| THEIR FAMILIES, | § | |
| | § | |
|    Petitioner Below, | § | |
|    Appellee. | § | |

Submitted: April 29, 2025
Decided: May 16, 2025

Before **SEITZ**, Chief Justice; **LEGROW** and **GRIFFITHS**, Justices.

## **ORDER**

After consideration of the appellant's brief and the motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the responses, and the Family Court record, it appears to the Court that:

(1)    The appellant ("Mother") filed this appeal from the Family Court's order dated November 18, 2024, that terminated Mother's parental rights as to her child born in July 2022 (the "Child"). The Family Court's order also terminated the

---

[1] The Court previously assigned pseudonyms to the appellant pursuant to Supreme Court Rule 7(d).

parental rights of the Child's unknown father. We focus on the facts in the record as they relate to Mother's appeal.

(2) Mother's counsel has filed a brief and a motion to withdraw under Supreme Court Rule 26.1(c). Mother's counsel asserts that, based upon a conscientious review of the record, there are no arguably appealable issues. Counsel provided Mother with a copy of the motion to withdraw and the accompanying brief and informed her of the provisions of Rule 26.1(c) and her right to supplement counsel's presentation. Mother provided issues for the Court's consideration. The Department of Services for Children, Youth and Their Families, Division of Family Services ("DFS") as appellee and the Child's attorney from the Office of the Child Advocate have responded to the Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3) In February 2023, DFS filed a petition for custody on the basis of dependency.[2] The petition alleged that DFS received a hotline report in November 2022, when the Child was four months old. Mother had been criminally charged with strangulation and endangering the welfare of the Child following an altercation with a friend with whom Mother and the Child were living. As a result, before DFS

---

[2] *See* 10 *Del. C.* § 901(8) (providing that a child is dependent if a person who "[i]s responsible for the care, custody, or control of the child" "[d]oes not have the ability or financial means to provide for the care of the child" and "[f]ails to provide necessary care with regard to: food, clothing, shelter, education, health care, medical care or other care necessary for the child's emotional, physical or mental health, or safety and general well-being").

filed the petition, DFS and Mother had made two different safety agreements. The first involved the Child's placement with a maternal aunt; it ended when the aunt could no longer care for him. Under the second agreement, Mother and the Child were supposed to live with another maternal aunt in Dover so that the aunt could supervise contact, but Mother left and moved to Maryland.

(4) The petition further alleged that Mother had mental health diagnoses including anxiety and bipolar disorder but was not receiving any mental health treatment. Mother had aged out of the foster care system and had a history with DFS involving her three older children. Those cases had been resolved after two of the children went to live with their father in Tennessee and the other child was placed in a guardianship.

(5) The Family Court granted custody of the Child to DFS on an *ex parte* basis on February 8, 2023. The Child was placed in a foster home, and the mandated hearings ensued.[3] The court appointed counsel to represent Mother. At the preliminary protective hearing, Mother stipulated that there was probable cause to find the Child dependent based on the criminal charges against Mother involving the Child. It appeared that the Child had not been seen by a physician since birth.

---

[3] *See Kline v. Del. Div. Family Servs.*, 2023 WL 2259101, at *1 n.3 (Del. Feb. 28, 2023) ("When a child is removed from home by DFS and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules." (citing 13 *Del. C.* § 2514; DEL. FAM. CT. R. CIV. PROC. 212-19)).

Mother participated in the hearing by telephone. Indeed, Mother remained in Maryland for the course of most of the dependency proceedings, which created a barrier to her participation in the proceedings. Mother participated in most of the hearings by telephone but was physically present in court only once, on the first day of the two-day termination of parental rights ("TPR") hearing.

(6) At the adjudicatory hearing on March 13, 2023, Mother stipulated to a finding that the Child was dependent in her care based on the pending criminal charges and Mother's unstable housing situation. She also stipulated that it was in the Child's best interests for DFS to have custody but requested the opportunity to plan for reunification.

(7) DFS developed a case plan for Mother with the goal of reunification, and the Family Court found the case plan to be reasonable. The case plan required Mother to complete a mental health evaluation and comply with recommended treatment; address her criminal charges, refrain from obtaining new charges, and comply with probation; complete a parent-education course; obtain and maintain safe and stable housing and provide DFS with a copy of the lease; provide verifiable proof of income and complete a budget with DFS; and engage in in-person visits with the Child for two to three hours each week. With respect to visitation, Mother agreed that she would arrange for transportation to the Maryland-Delaware state line, and DFS agreed that it would arrange for transportation to the visits from there.

(8) Mother made only limited progress on her case plan in 2023 and early 2024. She continued to live in Maryland. Although DFS tried to work with Mother to arrange transportation so that she could visit the Child, Mother's corresponding efforts were limited. She therefore visited with the Child in person only once during that period, in August of 2023. She also had a few virtual visits with the Child, but such visits were not particularly useful in developing her bond with the Child, given his young age. Mother's probation was transferred to Maryland, and she appeared to be compliant. She completed a parent-education course, which was also a requirement of her probation. Mother was diagnosed with bipolar disorder—she attended some mental health treatment sessions but was inconsistent in her attendance and did not appear to be taking her prescribed medications. At several of the hearings in 2023, evidence was presented that Mother reported that she had been paying $500 to $600 per month toward deposits, rent, and other fees for an apartment she was "going to move into," but the move-in date kept getting delayed. Mother did not identify her landlord, provide DFS with an address or lease, or move into the housing.

(9) In November 2023, DFS filed a motion to change the permanency goal from reunification to termination of parental rights and adoption. The court scheduled a hearing on the motion for January 29, 2024. On January 17, 2024, DFS filed a petition for termination of parental rights. Mother did not appear for the

5

January 2024 hearing. Mother's counsel reported that she had had only sporadic contact with Mother since July 24, 2023. The last telephone number that counsel had for Mother was no longer in service. DFS had also had difficulty maintaining contact. Mother had missed several psychiatric medication-management appointments. She had not visited the Child since August 2023, and her housing situation remained as discussed above. The court granted the motion to change the permanency goal.

(10) A TPR hearing was scheduled for April 29, 2024. On April 8, 2024, Mother's counsel filed a motion seeking to stay the TPR proceedings on the grounds that Mother had been the victim of a housing scam. The court converted the previously scheduled TPR hearing to a post-permanency review hearing. Mother had returned to live in Delaware and had a visit with the Child on April 10, 2024. Following discussion of Mother's motion, the parties agreed that Mother would have an additional three months to work on her case plan. If Mother made progress, the next hearing, scheduled for July 22, 2024, would be another review hearing in the dependency case and DFS would revisit the permanency goal; if she did not make progress, the July 2024 hearing would be a TPR hearing.

(11) The court convened a teleconference on July 1, 2024, to decide whether the upcoming hearing would proceed as a review or TPR hearing. After hearing from counsel, the court determined that it would proceed as a TPR hearing.

6

(12) Mother attended the July 22, 2024 hearing in person. As noted above, that was the only time Mother appeared in person. Mother had left her previous residence after an altercation with her host resulted in her arrest on offensive touching charges. She was living with a friend or relative in Wilmington, but DFS had determined that the home was not suitable for the Child based on the host's criminal history and significant DFS history, including an involuntary TPR several years earlier and a recent case that had only closed because the child's father had been given sole custody. Mother had not secured other housing. Mother had engaged in some mental health services in Wilmington and reported that she was taking her medications. Mother had attended four visits with the Child. The court determined that the hearing would continue for a second day on September 9, 2024.

(13) Mother did not attend the second day of the TPR hearing in person. She called to report that she had moved to Baltimore, Maryland, and could not attend; the court permitted her to participate by telephone. Mother had not visited with the Child since July 19, having missed, declined to schedule, or cancelled three visits that had been offered. Mother had completed a mental health intake appointment in June and attended two therapy sessions and a medication management appointment between then and the September hearing. She had had two drug screenings that were positive for cocaine and marijuana. She was living in Baltimore with a friend but had not provided DFS with a lease or address. Mother's only income was social

security benefits, from which she testified she received $943 per month. The Child was thriving in his foster home.

(14) In terminating Mother's parental rights, the court held that DFS had established, by clear and convincing evidence, that Mother had failed to plan adequately for the Child during the approximately eighteen months that he had been in DFS custody.[4] The court emphasized Mother's failure to make progress toward obtaining stable housing and her minimal visitation with the Child, even when she was residing in Delaware, and her return to Maryland, where she lacked transportation, stable housing, was no longer attending mental health treatment, and was not visiting with the Child. The court determined that DFS had made reasonable efforts toward reunification and to identify relative placements for the Children. Applying the best-interest factors,[5] the Family Court found that DFS had established, by clear and convincing evidence, that it was in the Child's best interests to terminate Mother's parental rights.

(15) On appeal, Mother contends that her counsel "failed" her. She asserts that the State took advantage of her, made false accusations against her, and worked

---

[4] 13 *Del. C.* § 1103(a)(5)a; *see also id.* § 1103(a)(5)b. The court also found that DFS had established, by clear and convincing evidence, that DFS previously had temporary emergency custody of Mother's three older children, *id.* § 1103(a)(5)c, and there was a history of dependency, neglect, abuse, or lack of care with regard to those children, *id.* § 1103(a)(5)d.

[5] *See* 13 *Del. C.* § 1103(a) (providing that parental rights may be terminated if one of several statutory grounds is established and termination "appears to be in the child's best interest"); *id.* § 722 (setting forth factors that the court may consider when determining the best interests of a child).

8

against her instead of with her, particularly by finding her housing situation unsuitable. Fairly summarized, she contends that the Family Court overlooked the progress that she made on her case plan, emphasizing that she completed her parent-education course and participated in mental health services.

(16) This Court's review of the Family Court's decision to terminate parental rights entails consideration of the facts and the law as well as the inferences and deductions made by the Family Court.[6] We review legal rulings *de novo*.[7] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[8] If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[9]

(17) The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[10] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[11] When the statutory basis for termination is failure to plan adequately for the child's needs, the Family Court must also find proof of at least one additional statutory condition.[12] Second, if the Family Court finds a statutory basis for termination of

[6] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).
[7] *Id.* at 440.
[8] *Id.*
[9] *Id.*
[10] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[11] *Id.* at 537. *See* 13 *Del. C.* § 1103(a) (setting forth the grounds for termination of parental rights).
[12] 13 *Del. C.* § 1103(a)(5)a-e (listing additional conditions, including that the child has been in DFS custody for at least one year, or for six months if the child came into care as an infant).

parental rights, then the court must determine whether terminating parental rights is in the best interests of the child.[13] Both of these requirements must be established by clear and convincing evidence.[14]

(18) After careful consideration of the parties' positions and the record on appeal, including the transcripts of the hearings in the dependency and TPR proceedings, we conclude that the judgment of the Family Court should be affirmed. The Family Court's findings that Mother had failed to complete critical aspects of her case plan and that termination of her parental rights was in the Child's best interests were not clearly erroneous. The court gave Mother additional time to work on her case plan after she reported having been scammed out of rent prepayments, and additional time passed between the two days of the TPR trial. Yet during the approximately eighteen months that the Child was in foster care, Mother did not make consistent efforts to visit with him, did not secure housing or otherwise demonstrate her ability to meet his physical and other needs, did not complete other important elements of her case plan, and generally did not take advantage of the services that DFS offered to her with the goal of reunifying her with the Child. We find no error in the Family Court's application of the law to the facts and are satisfied

---

[13] *Shepherd*, 752 A.2d at 537.

[14] *Powell v. Dep't of Servs. for Children, Youth & Their Families*, 963 A.2d 724, 731 (Del. 2008).

10

that Mother's counsel made a conscientious effort to examine the record and the law and properly determined that Mother could not raise a meritorious claim on appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.  The motion to withdraw is moot.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice

11