IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CARL ROSS,[1] | § | |
| | § | No. 189, 2025 |
| Respondent Below, | § | |
| Appellant, | § | Court Below–Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File Nos. 24-04-11TN |
| DEPARTMENT OF SERVICES | § | CN22-05370 |
| FOR CHILDREN, YOUTH AND | § | |
| THEIR FAMILIES, DIVISION OF | § | Petition Nos. 24-09414 |
| FAMILY SERVICES, | § | 22-23571 |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |
| | § | |

Submitted: September 2, 2025
Decided: September 30, 2025

Before **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices.

## ORDER

After consideration of the no-merit brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the responses, and the Family Court record, it appears to the Court that:

---

[1] The Court previously assigned a pseudonym to the appellant under Supreme Court Rule 7(d).

(1)     By order dated April 2, 2025, the Family Court terminated the parental rights of the appellant, Carl Ross ("Father"), with respect to his daughter, born in January 2016 (the "Child").[2]  Father appeals.

(2)     On appeal, Father's counsel filed an opening brief and a motion to withdraw under Rule 26.1(c).  Counsel asserts that he conducted a conscientious review of the record and the relevant law and determined that Father's appeal is wholly without merit.  Counsel informed Father of the provisions of Rule 26.1(c), provided him with a copy of the motion to withdraw and the accompanying brief, and advised him that he could submit in writing any additional points that he wished the Court to consider.  Father submitted points for the Court's consideration.  The Delaware Department of Services for Children, Youth and Their Families, Division of Family Services ("DFS") as the appellee and the Child's attorney and court-appointed special advocate ("CASA") have responded to counsel's Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3)     The Family Court proceedings in this case began in November 2022, when DFS petitioned for emergency custody of the Child, alleging that Mother was mentally unstable and was unable to care for the Child, and Father's whereabouts were unknown.  The Family Court granted the petition.

---

[2] The Family Court's order also terminated the parental rights of the Child's mother ("Mother"). We refer only to facts in the record that relate to Father's appeal.

(4)   With the filing of DFS's dependency-and-neglect petition, the mandated hearings ensued.[3]  At the preliminary protective hearing, the Family Court found that Father was unable to care for the Child, who had complex medical needs. The Child had been at a medical facility from birth until January 2022 when she was released into Mother's care.  Mother testified that Father was absent and had failed to complete the necessary training to care for the Child.  Father testified that he regularly visited the Child during her inpatient care.

(5)   At the adjudicatory hearing, the evidence showed that the Child had cerebral palsy, short gut syndrome, and gross and fine motor delays.   The Child required continuous follow-up care for physical therapy, occupational therapy, and other medical needs.  Father did not stipulate to the Child's dependency but advised DFS that he was currently unable to care for the Child physically, medically, or financially.  The Family Court found that the Child remained dependent in Father's care.

(6)   DFS developed a case plan to facilitate Father's reunification with the Child.  Father's case plan required him to: (i) undergo a substance abuse evaluation and follow all recommended treatments; (ii) complete a parenting class; (iii) obtain and maintain stable employment and housing; and (iv) demonstrate his ability to

---

[3] When DFS obtains custody of a child, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules. 13 *Del. C.* § 2514; Del. Fam. Ct. Civ. Proc. R. 212-219.

handle the Child's medical needs. The Family Court approved the case plan at a January 17, 2023 dispositional hearing that Father failed to attend.

(7) Father also failed to attend review hearings on April 13, 2023 and July 20, 2023. At the conclusion of the July 20, 2023 hearing, the Family Court granted Father's appointed counsel's request to withdraw based on Father's lack of involvement. The hearings reflected that Father's communication with DFS was sporadic, he had not made progress on his case plan, and he was struggling with housing and financial instability. Father was visiting the Child. The Child was doing well with a foster family, but the family indicated that they could not serve as a permanent placement for the Child. At each hearing, the Family Court found that the Child remained dependent.

(8) On October 9, 2023, the Family Court granted DFS's motion to change the permanency plan for the Child to termination of parental rights ("TPR") and adoption. Father failed to appear for a permanency hearing on October 14, 2023 and a post-permanency review hearing on January 29, 2024. He still had not made progress on his case plan, his whereabouts were unknown, and his communication with DFS remained sporadic. According to the Child's CASA, Father had stated that he would not complete any elements of his case plan, but was consistently visiting the Child.

(9) On April 26, 2024, DFS moved to terminate Father's parental rights based on his failure to plan for the Child's physical needs or mental and emotional health and development. A hearing on the petition was initially scheduled for May 20, 2024, and then rescheduled for October 25, 2024.

(10) In an August 2, 2024 post-permanency hearing order conducted by paper review, the Family Court found that the Child remained dependent. The order reflected that the Child's G tube had become infected and she was hospitalized between February 8, 2024 and May 7, 2024. She was hospitalized again in May when her central line became clogged. After the Child's hospitalization, she lived in a skilled nursing facility for children while DFS looked for a foster care family that could meet her medical needs. This would require training for the Child's G tube, central line, and total parenteral nutrition. Father had not communicated with DFS and had not completed his case plan.

(11) Father appeared for the TPR hearing on October 25, 2024. He opposed termination of his parental rights and requested appointment of counsel because he did not understand the proceedings. The Family Court appointed counsel to represent Father and rescheduled the TPR hearing for March 25, 2025.

(12) At the March 25, 2025 hearing, the Family Court heard testimony relevant to Father from: the supervisor of the DFS treatment worker who worked with Father; the Child's DFS permanency worker; Father; and the Child's CASA.

Father offered conflicting testimony concerning his receipt and awareness of his case plan. The DFS witnesses and the Child's CASA testified that Father had received and was aware of his case plan.

(13) In December 2024, Father obtained a substance abuse and mental health evaluation that did not recommend treatment. He failed to complete a parenting class and told DFS that he would not do so because he did not think it was necessary. Father had not provided any proof of employment to DFS, but testified that he had been employed for eight months. He was renting a room with shared access to a bathroom and kitchen but testified that it was not what he would want for the Child.

(14) There was also testimony concerning the Child's: medical conditions; continued placement at a skilled nursing facility for children while DFS looked for a foster home that could meet her medical needs; appointments with specialists and therapists; and her progress in school. Father regularly visited the Child, but did not receive training to address her medical needs. He had never lived with the Child or been her primary caretaker. The Child's CASA testified that the Child enjoyed Father's visits, but did not talk about him otherwise, perhaps because she had never lived with him. The CASA believed that termination of Father's parental rights was in the Child's best interests. Following the hearing, the Family Court issued a written decision terminating Father's parental rights.

6

(15)   In this appeal from the Family Court's TPR decision, the Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[4] We review legal rulings *de novo*.[5] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[6] If the trial judge has correctly applied the law, then our standard of review is abuse of discretion.[7] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[8]

(16)   The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[9] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[10] When the statutory basis for termination is failure to plan, the Family Court must also find proof of at least one additional statutory condition.[11] If the Family Court finds a statutory basis for termination of parental rights, the court must then determine whether, under 13 *Del. C.* § 722, severing parental rights is in the child's

---

[4] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).
[5] *Id*. at 440.
[6] *Id.*
[7] *Id.*
[8] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[9] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[10] *Id*. at 537.
[11] 13 *Del. C.* § 1103(a)(5)(a)-(e) (listing additional conditions).

best interests.[12] Both of these requirements must be established by clear and convincing evidence.[13]

(17) Here, the Family Court found that DFS proved by clear and convincing evidence that the termination of Father's parental rights was appropriate because of his failure to plan[14] and the Child had been in DFS custody for more than one year.[15] The court recognized that Father obtained a substance abuse evaluation as required by his case plan, but found that Father did not maintain stable employment or appropriate housing as required. Father also failed to complete a parenting class or demonstrate that he was able to manage the Child's medical needs. The court further found by clear and convincing evidence that DFS had made reasonable efforts to reunify the family. Applying the best interest factors,[16] the court found that DFS had established, by clear and convincing evidence, that it was in the Child's best interests to terminate Father's parental rights. The court highlighted the Child's complex medical needs and the fact that Father had never been responsible for handling those needs on a daily basis.

---

[12] *Shepherd*, 752 A.2d at 537.

[13] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).

[14] 13 *Del. C.* § 1103(a)(5).

[15] *Id*. § 1103(a)(5)(a).

[16] 13 *Del. C.* § 1103(a) (providing that parental rights may be terminated if one of several statutory grounds is established and termination "appears to be in the child's best interest"); *id*. § 722 (setting forth factors that the court may consider when determining the best interests of a child).

(18) In the points that Father submitted for this Court's consideration, he expresses his love for the Child and his desire to be a part of her life. He blames communication issues with DFS for his failure to complete the case plan. The record does not support a conclusion that communication failures are to blame here. Even though Child had complex medical needs and never lived with him, Father told DFS that he did not need or intend to take a parenting class. He told the Child's CASA that he was not going to complete his case plan. For most of the time that the Child was in DFS custody, Father was unemployed, lacked stable housing, and failed to appear for multiple court hearings. Father consistently visited the Child but showed no ability to care for her physically, medically, or financially on a regular basis. The Family Court did not err in concluding that Father failed to plan adequately for the Child's physical needs.

(19) Having carefully reviewed the parties' positions and the record on appeal, we find that the Family Court's factual findings are supported by the record, and we can discern no error in the court's application of the law to the facts. We therefore conclude that Father's appeal is wholly without merit and devoid of any arguably appealable issues. We are satisfied that Father's counsel made a conscientious effort to examine the record and the law and properly determined that Father could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.  Counsel's motion to withdraw is moot.


BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice