IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JAKE SCOTT,[1] | § | |
| | § | No. 471, 2025 |
| Respondent Below, | § | |
| Appellant, | § | Court Below–Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. 23-02-11TN |
| DEPARTMENT OF SERVICES | § | Petition No. 25-11773 |
| FOR CHILDREN, YOUTH AND | § | |
| THEIR FAMILIES, | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: April 14, 2026
Decided: May 8, 2026

Before **SEITZ**, Chief Justice; **VALIHURA** and **GRIFFITHS**, Justices.

## **ORDER**

After consideration of the no-merit brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the responses thereto, and the Family Court record, it appears to the Court that:

(1)    By order dated October 20, 2025, the Family Court terminated the parental rights of the appellant, Jake Scott ("Father"), in his son, born in April 2024 (the "Child").[2] Father appeals.

---

[1] The Court previously assigned a pseudonym to the appellant under Supreme Court Rule 7(d).
[2] The Family Court's order also terminated the parental rights of the Child's mother. We refer only to facts in the record that relate to Father's appeal.

(2) On appeal, Father's counsel has filed an opening brief and a motion to withdraw under Rule 26.1(c). Counsel asserts that she has conducted a conscientious review of the record and the relevant law and has determined that Father's appeal is wholly without merit. Counsel informed Father of the provisions of Rule 26.1(c), provided him with a copy of counsel's motion to withdraw and the accompanying brief, and advised him that he could submit in writing any additional points that he wished for the Court to consider. Father has submitted arguments for the Court's consideration. The Delaware Department of Services for Children, Youth and Their Families (DSCYF) as the appellee and the Child's attorney from the Office of the Child Advocate have responded to counsel's Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3) On August 23, 2024, DSCYF petitioned for emergency custody of the Child after the Child's mother violated a safety plan that DSCYF put in place because of its concerns about the Child's mother's untreated mental health diagnoses, history of domestic violence, and prior involvement with DSCYF.

(4) With the filing of DSCYF's dependency-and-neglect petition, the mandated hearings ensued.[3] At the preliminary protective and adjudicatory hearings, Father stipulated that the Child was dependent in his care because he was

---

[3] When a child is removed from his home by DSCYF and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules. 13 *Del. C.* § 2514; Del. Fam. Ct. Civ. Proc. R. 212-219.

incarcerated for, among other things, endangering the welfare of a child and violating a protection-from-abuse (PFA) order.

(5) In November 2024, DSCYF developed a case plan to facilitate Father's reunification with the Child. Father's case plan required him to, upon his release from prison: (i) undergo a psychological evaluation and follow all treatment recommendations; (ii) undergo a substance abuse evaluation and follow all treatment recommendations; (iii) work with a family interventionist to, among other things, obtain and maintain stable employment and housing; (iv) complete a parenting class; (v) enroll in (and successfully complete) the Offender Intervention Services program offered by Child, Inc.; and (vi) attend the Child's medical appointments and work with his treatment providers to ensure that his medical needs were being met. The case plan also required that Father refrain from committing new criminal offenses or violating the existing PFA order prohibiting him from contacting the Child's mother. The case plan also noted that there was a presumption that the Child could not be placed in Father's home because Father was a perpetrator of domestic violence.[4]

---

[4] *See* 13 *Del. C.* § 705A(a) ("Notwithstanding other provisions of this title, there shall be a rebuttable presumption that no perpetrator of domestic violence shall be awarded sole or joint custody of any child."), *id.* § 705A(c) (providing that the presumption will be overcome if "there have been no further acts of domestic violence" and the perpetrator of domestic violence has, among other things, successfully completed "a program of evaluation and counseling designed specifically for perpetrators of family violence and conducted by a public or private agency or a certified mental health professional").

(6)     At the March 14, 2025 review hearing, Father stipulated that the Child remained dependent in his care because he was still incarcerated. Because Father continued to be incarcerated, he had neither made any progress on his case plan nor visited with the Child.

(7)     On May 30, 2025, the Family Court granted DSCYF's motion to change the permanency plan from reunification to termination of parental rights (TPR) for the purpose of adoption. The same day, DSCYF moved to terminate Father's parental rights for his failure to plan for the Child's physical needs or mental and emotional health and development.[5] As of the June 2, 2025 permanency hearing, Father remained incarcerated, and DSCYF had no information about any progress that he might have made on his case plan.

(8)     The Family Court held a TPR hearing on October 20, 2025. Father, who had been released from prison in June, did not appear. The Family Court heard testimony from Father's DSCYF treatment worker, the Child's DSCYF permanency worker, the Child's foster mother, and the Child's court-appointed special advocate. Father's certified criminal history showed that he was arrested for shoplifting in July—just weeks after he had been released from prison. At the time of the TPR hearing, Father was on probation in Delaware and Pennsylvania and had several

---

[5] When a child comes into DSCYF custody as an infant, DSCYF may file a TPR petition after the child has been in DSCYF custody for six months. 13 *Del. C.* § 1103(a)(5)(b).

outstanding warrants. Except for one phone call to his treatment worker in May 2025, Father had not communicated with DSCYF, and his current whereabouts were unknown. Nor had Father been communicating with his attorney, who advised the court that she had received just one phone call from Father, asking her—without explanation—to request a continuance of the TPR hearing. The Child, who had initially struggled to meet some developmental milestones, was doing well in foster care and was transitioning to a home that was an adoptive resource. At the conclusion of the hearing, the Family Court granted DSCYF's TPR petition. This appeal followed.

(9)     On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[6] We review legal rulings *de novo*.[7] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[8] If the trial judge has correctly applied the law, then our standard of review is abuse of discretion.[9] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[10]

---

[6] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).
[7] *Id*. at 440.
[8] *Id*.
[9] *Id*.
[10] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

(10)    The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[11] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[12] When the statutory basis for termination is failure to plan, the Family Court must also find proof of at least one additional statutory condition.[13] If the Family Court finds a statutory basis for termination of parental rights, the court must then determine whether, under 13 *Del. C.* § 722, severing parental rights is in the child's best interest.[14] Both of these requirements must be established by clear and convincing evidence.[15]

(11)    Here, the Family Court found that DSCYF had proved, by clear and convincing evidence, that the termination of Father's parental rights was appropriate because of his failure to plan[16] and that the Child had been in DSCYF custody for more than six months.[17] The Family Court also found, by clear and convincing evidence, that termination of Father's parental rights was in the Child's best interest.

---

[11] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).

[12] *Id.* at 537.

[13] 13 *Del. C.* § 1103(a)(5)(a)-(e) (listing additional conditions).

[14] *Shepherd*, 752 A.2d at 536-37.

[15] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).

[16] 13 *Del. C.* § 1103(a)(5).

[17] *Id.* § 1103(a)(5)(b).

(12) In the points that Father has submitted for the Court's consideration, Father argues, in essence, that DSCYF did not provide meaningful reunification services to him. Father also maintains that an attorney who represented him earlier in the dependency-and-neglect proceedings was ineffective. Father's arguments are unpersuasive.

(13) The record reflects that Father had the contact information for his DSCYF treatment worker and declined to communicate with her until May 2025—more than eight months after the Child (then a four-month-old) had been placed in DSCYF custody. And Father made no attempt to contact DSCYF or visit with the Child after he was released from prison in June 2025. We also note that Father was reminded repeatedly by the Family Court that he would not be able to make progress on his case plan while he was incarcerated. Finally, despite knowing that there was a legal presumption that the Child could not be placed with him, Father did not (and does not) claim that he made any effort to enroll in (much less complete) the Offender Intervention Services program. That is, even if Father had maintained contact with DSCYF, completed some elements of his case plan, *and* appeared at the TPR hearing, the Child could not have legally been placed with him following the hearing because Father had not satisfied the case plan's domestic-violence component.

(14) To the extent that Father maintains that his previous attorney's ineffective representation led to the termination of his paternal rights, the record does not support his claim. Father fails to identify any action that counsel could have taken on his behalf that would have mitigated, much less excused, Father's failure to complete the elements of his case plan.

(15) Having carefully reviewed the parties' positions and the record on appeal, we find that the Family Court's factual findings are supported by the record, and we can discern no error in the court's application of the law to the facts. We therefore conclude that Father's appeal is wholly without merit and devoid of any arguably appealable issues. We are satisfied that Father's counsel made a conscientious effort to examine the record and the law and properly determined that Father could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. Counsel's motion to withdraw is moot.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice

8